**STATE of Missouri, Respondent,**

v.

**Angel Patience BROWN aka Streit, Appellant.**

**No. WD 38926.**

Missouri Court of Appeals, Western District.

Nov. 24, 1987.

Preston L. Cain, Kansas City, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, C.J., and LOWENSTEIN and GAITAN, JJ.

LOWENSTEIN, Judge.

The appellant Angel Patience Streit appeals her conviction for carrying a concealed weapon, two counts of possessing a short-barrel shotgun, and possessing cocaine. The question presented is whether under the totality of the circumstances as set forth in affidavits, there was a fair probability that evidence of a crime involving robbery of a camera would turn up in a car being driven by Streit and thus formed a sufficient basis for the issuance of the search warrant.

On April 9, 1986, an officer acting in the dual capacity of police officer of Brunswick and deputy sheriff of Chariton County followed a red over white Chrysler Cordoba into a convenience store parking lot. The officer had previous information concerning a red over white Cordoba which had been involved in two armed robberies in a nearby county. In the parking lot, the woman driver and only occupant of the Cordoba engaged in conversation with the occupants of a black Chevrolet Monte Carlo, the driver Streit, and a male passenger. The two vehicles departed the lot, apparently traveling together, and were followed by the officer for seven or eight miles. The vehicles then pulled onto the side of the road and stopped with the officer pulling in behind them, the officer only then activating his red lights. The officer had not yet received radio requested information on a license check of the vehicles. The occupants of the Monte Carlo, including the appellant Streit, produced identification upon request, as did the driver of the Cordoba. Upon further radio license check, all three individuals were taken in for questioning. The individuals and the vehicles were taken to the same location.

A complaint for search warrant was executed by the county prosecuting attorney at 12:05 a.m. on April 10, 1986. It requested a search warrant to search the Monte Carlo for the specific camera taken in one of the robberies with which the Cordoba had been associated. The camera had not been found in an earlier search of the Cordoba consented to by the driver. Based on the complaint and the supporting affidavits the search warrant was issued and immediately executed. The camera was not found. Among the items that were discovered in the Monte Carlo's

trunk or interior (not in plain view) were two short-barrel shotguns, a bottle determined to contain cocaine residue, a .357 magnum pistol, bolt cutters, a stocking mask and a police scanner book. As a result, Streit was charged with the counts on which she was convicted.

Prior to trial, Streit filed motion to quash the search warrant and to suppress evidence. The motions were overruled, with the court finding "a fair probability that the camera would be found in the black Monte Carlo."

## I.

Streit's primary point on appeal is that the trial court erred in overruling the pretrial motion to quash the warrant and her continuing objection to introduction of the evidence seized. It is her position that the affidavits given to support issuance of the search warrant failed to establish probable cause for the search and were not related to the area of the search. Upon review, this court agrees.

It is fundamental that no warrant shall issue but upon probable cause. U.S. Const. amend. IV; Mo. Const. art. I, § 15; § 542.276.10(3); *State v. Brown*, 708 S.W. 2d 140, 143 (Mo. banc 1986). The United States Supreme Court has held and reiterated that probable cause is to be determined by looking at the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984). Missouri courts have concurred. *State v. Luleff*, 729 S.W.2d 530 (Mo.App.1987); *State v. Hall*, 687 S.W.2d 924 (Mo.App.1985); *State v. Horsey*, 676 S.W.2d 847 (Mo.App.1984). *Gates* indicates that "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." 103 S.Ct. at 2329. Expounding on the role of the magistrate issuing the warrant and an appellate court reviewing the issuance, the court stated:

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed.

*Gates*, 103 S.Ct. at 2332.

While the review for a "substantial basis" of probable cause under the totality of the circumstances test contemplates great deference to the magistrate's decision, *State v. Pennington*, 642 S.W.2d 646, 648 (Mo.1982), the magistrate is not allowed unfettered discretion. "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others" while the reviewing court "must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." *Gates*, 103 S.Ct. at 2333. Upon review of the affidavits in this case they fall short of a finding of substantial basis for concluding probable cause existed for issuance of the search warrant. An examination of the affidavits to see if a fair probability that contraband would be found in the Monte Carlo existed is now in order. *State v. Hall, supra*, 687 S.W.2d at 929.

Four affidavits accompanied the complaint for the warrant. Three of them provide information that arguably establish probable cause to search the Cordoba. The first affidavit, by the robbery victim, relates to the loss of her camera; the second affidavit, by a motel employee, relates to the presence and the coming and goings of the Cordoba and one Donald Whatley at a motel in the city where the camera was stolen; and the third, by a deputy sheriff, relates to the ongoing investigation of three robberies (including the one when the camera was taken) and states that Whatley has been identified by a robbery victim as the suspect and restates the Cordoba/Whatley links. For clarity and because the outcome of the case hinges on the fourth affidavit it is now set out in full:

## AFFIDAVIT OF PERRY STARK

Comes now Perry Stark of lawful age, being first duly sworn on his oath, deposes and states as follows:

1. That I am a Police Officer for the City of Brunswick and Deputy Sheriff for Chariton County, Missouri and on April 9, 1986, at approximately 1:00 P.M. I observed a red over white 1977 Chrysler Cordoba bearing Missouri license plate number GTW 051 east bound on U.S. 24 Highway in Brunswick, Missouri. I then noticed the female occupant of said vehicle was engaged in conversation at the Casey's Store with two occupants of another vehicle described as 1985 black Monte Carlo bearing Missouri license plate number WHL 305 and who were a white male and a white female. They seemed to know each other and be together. The two vehicles and their occupants remained at the Casey's store for approximately two to five minutes and left together east bound on U.S. 24 Highway.

2. I followed these vehicles eastbound on U.S. 24 Highway.

3. I had previously received information by way of radio communications from the Moberly Police Department and the Randolph County Sheriff's Department that a suspect known as Donald G. Whatley who had been identified as being involved in two armed robberies in Randolph County on the afternoon of April 3, 1986 had just before the armed robberies been seen with a female driving a red over white Chrysler Cordoba.

I had also previously received information by way of police communications that a suspect on whom I had received a copy of a sketch appeared to match the male occupant of the black Monte Carlo. In addition these cars drove at a slow rate of speed and stayed together.

6. I followed these vehicles to Route MM, turned south on MM and continued to follow them for four to five miles at which time they each stopped on the right side of the road although I had not used any of my warning devices including red lights and siren in any manner tried to stop them. I pulled my patrol car behind the trailing vehicle and then put my red lights on.

7. I then walked up to the first car in front of me being the Chrysler Cordoba. At this time the male occupant of the front car, the black Monte Carlo exited from the passenger side of the vehicle. I asked him for identification and he said it was in his car. He then had the female driver hand him his billfold and I also asked her for her identification. She then furnished her identification. I then had her turn off her engine. I then proceeded back the the [sic] white Chrysler and requested that the only occupant being the female driver to produce her identification. All occupants produced drivers licenses as follows:

The driver of the white Cordoba giving me an Oklahoma drivers license indicating her name as Brenda Van Gundy. The passenger of the black Monte Carlo giving me a Missouri drivers license indicating his name as Richard Duane Smith. The driver of the black Monte Carlo giving me a Missouri drivers license indicating her name as Angel Patience Streit.

8. Based upon the previous information stated in this Affidavit the above three individuals were taken to the Chariton County Sheriff's Department for questioning concerning any information that they had which related to the armed robberies in Moberly, Missouri on April 3rd. The vehicles were also taken to the Chariton County Sheriff's Department.

9. A Consent to Search the Chrysler Cordoba was obtained from Brenda Van Gundy, the only occupant and driver of that car who declared she was the owner of said car. At this time, I also received information that a Pentax camera might be in said car as it was stolen in one of the robberies from Randolph County. In addition Brenda Van Gundy voluntarily stated that 2 weeks ago that Donald G. Whatley and Richard Duane Smith had picked her up in the black Monte Carlo and stated that she was the sister of Donald G. Whatley who was incarcerated in the Chariton County Jail for armed

robberies in Chariton County and Randolph County on April 3, 1986.

10. That a search of the Chrysler Cordoba did not disclose the existence of the Pentax camera stolen from the Moberly armed robbery but did disclose the existence of a stolen revolver from Independence, Missouri, burglary tools, and various drugs as well as a police scanner with the serial number filed off and a Sears television and photographs of Donald G. Whatley as well as photographs of what appeared to be the occupants of the black Monte Carlo.

11. Both Richard Duane Smith, the passenger in the black Monte Carlo as well as Brenda Van Gundy, the driver of the red over white Chrysler Cordoba stated that the two vehicles had been traveling together and that they knew each other but they each refused to state where they had started from except to say that they had come from Kansas City.

12. The undersigned believes that the contents of the black Monte Carlo may contain the stolen Pentax camera from the Moberly armed robbery since the red over white Chrysler Cordoba matched the description of the car at or near the armed robberies and because both vehicles and their occupants were traveling together, and the camera could not be found in the Chrysler Cordoba.

13. In addition, an address book with telephone numbers was found on the person of Richard Duane Smith and that in that address book is a listing for "Angel Brown, 110 So. Topping, Kansas City, Mo. 14124, telephone number 241–1409." Based upon information from the records of the Sheriff's Department, Chariton County, I know that Donald G. Whatley while incarcerated called the number of "816–241–1409." On April 4, 1986. In addition, I found in said address book a listing for "Mom Smith, 805 S. Ash, Indep., Mo. 64053, telephone 252–8080." I also determined from the Chariton County Sheriff's records that Donald G. Whatley on April 4, 1986 attempted to call "252–8080." Both of these numbers indicate a connection between Donald G. Whatley who has been charged with arm-ed robberies in Chariton and Randolph Counties and the occupants of the black Chevrolet Monte Carlo.

Conspicuously lacking is any substantial basis for concluding that probable cause existed to search the Monte Carlo, that is, that given all the circumstances, there is a fair probability evidence of a crime will be discovered in a particular place. *State v. Hall*, 687 S.W.2d at 929.

█ It seems fairly clear, though unnecessary for this appeal that probable cause did exist to search the Cordoba had not there been a consent. *See U.S. v. Granger, infra.* It is also clear that any probable cause as to the Monte Carlo was based entirely on its association with the suspect Cordoba and the incarcerated suspect Whatley. Not even the totality of the circumstances test can be stretched this far. While it is evident that the two cars were traveling together, and that the parties knew a jailed robbery suspect, such behavior and knowledge is as consistent with innocent behavior as with criminal activity on the part of the occupants of the Monte Carlo. Mere proximity, without more, to others independently suspected of criminal activity does not establish probable cause to search that person. *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979). *See also, State v. Young*, 701 S.W.2d 490, 494 (Mo.App.1986) (mere association is insufficient basis for arrest). The fact that someone meets and travels with another person suspected in criminal activity, and/or knows a jailed suspect with nothing more falls short of probable cause.

█ What "more," along with the proximity existing under these facts, could have served to establish probable cause, to establish not the certainty of criminal activity, but the probability? *See, United States v. Rose*, 731 F.2d 1337, 1344 (8th Cir.1984). The cases that address the issue generally describe a more developed, concrete link to the criminal activity under investigation. In *State v. Pennington, supra*, the court discussed the sufficiency of an affidavit. It noted, without deciding on sufficiency, that the affidavit linked a certain automo-

bile with a defendant for whom an arrest warrant had been issued in connection with a robbery but did not link the vehicle to the robbery or indicate the short time span that had elapsed since the robbery. 642 S.W.2d at 648. *United States v. Lee,* 743 F.2d 1240 (8th Cir.1984) concerned affidavit information on an aircraft to be searched. The court found sufficient information in the fact that "the plane arrived with darkened windows; the individuals exited the plane in a suspicious manner, leaving the top part of the door closed, the seats were removed from the passenger compartment; auxillary fuel tanks were installed, and the cabin was lined with platic." *Id.* at 1247. The affidavit in *United States v. Depee,* 728 F.2d 1168, 1170 (8th Cir.1984) found the "accurate, detailed information" from an informant which was corroborated by police investigation sufficient to support a finding of probable cause. The lengthy list of surveillance observations in *United States v. Mendoza,* 722 F.2d 96 (5th Cir. 1983) was held to establish probable cause for a warrantless search. An individual driving to elude surveillance, using pay phones, inspecting his car's undercarriage, visiting a man also trying to elude surveillance, and using multiple and inconsistent identities were held, along with other factors, to form a basis for probable cause. *Id.* at 101. This type of developed information is simply not present here.

The affidavits in question are completely lacking in factual information that could result in a judgment that the car was a part of or contained the fruits of a criminal enterprise. *See, State v. Wallace,* 593 S.W.2d 545, 548 (Mo.App.1979) (a pre-*Gates* case). There is no indication of prior suspicion of the Monte Carlo or its occupants relevant to the robbery when the camera was taken. There is no indication anything other than verbal communication was exchanged between the vehicles. Neither the innocent behavior and conduct of the occupants nor the visibly accessible parts of the car would create a suspicion relevant to the robbery or of any criminal activity related to the Monte Carlo or its occupants. The cars had in fact been observed together for *only a short period of time.* While it is

true the jailed suspect was alleged to have been in the Monte Carlo some two weeks before the seizure and search, this is before the subject robbery and still tenuously based on mere association with one suspected of criminal activity. In short, the search was premised merely on an association with the suspect car, the Cordoba, and the suspect individual; the search was in lieu of police investigation. When the facts in a search warrant affidavit are so attenuated in an attempt to create probable cause of any link to a crime, then there is not a substantial basis for concluding that probable cause existed, and the issuance of a search warrant is improper.

## II.

The state urges even if the search warrant is found insufficient because of no probable cause, the search and its fruits are saved by the so-called "good faith exception" to the exclusionary rule first stated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In other words the absence of probable cause does not end the inquiry since the state may seek a determination as to whether the searching officer acted reasonably and in good faith. *People v. Rivera,* 190 Cal. App.3d 1591, 236 Cal.Rptr. 116, 121 (1987). As construed by the Missouri Supreme Court, *Leon* teaches that evidence acquired "pursuant to a warrant issued by a detached and neutral magistrate should not be excluded, irrespective of the actual validity of the warrant, so long as the officer conducting the search acted in objectively reasonable reliance on that warrant." *State v. Brown,* 708 S.W.2d 140, 145 (Mo. banc 1986). The rationale for the exception to exclusion is that "the marginal or nonexistant benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Leon,* 104 S.Ct. at 3420.

The existence of the good faith exception does not represent a radical alteration in the law relating to probable cause. "In so limiting the suppression remedy, we

leave untouched the probable cause standard and the various requirements for a valid warrant." *Leon,* 104 S.Ct. at 3421. Missouri officers and judges have been cautioned against "assuming that they may prepare warrants cavalierly, in the assumption that suppression can be avoided by a bare assertion of 'good faith'. The constitutional and statutory requirements must be observed." *State v. Munson,* 714 S.W. 2d 515, 524 (Mo. banc 1986). Suppression remains an appropriate remedy in four situations: 1) if the affiant provides information he knows or should know is false; 2) the magistrate wholly abandons his judicial role; 3) if the affidavit is so lacking in probable cause as to render official belief in its existence entirely unreasonable; or 4) if the warrant is so facially deficient the executing officers cannot reasonably presume it to be valid. *Leon,* 104 S.Ct. at 3421. *See also, Brown,* 708 S.W.2d at 145, n. 9; *State v. Watson,* 715 S.W.2d 277, 279 (Mo.App.1986). Applicable to the case at bar is the third situation—the question of good faith is solely whether the affidavits were so lacking in indicia of probable cause that it was unreasonable for the officer to rely upon it.

In giving definition to the good faith exception, an officer's reliance on a probable cause determination must be objectively reasonable. *Leon,* 104 S.Ct. at 3420. That is, "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at n. 23; *State v. Varvil,* 686 S.W.2d 507, 511 (Mo.App.1985). Here, one of the officers executing the search supplied the key affidavit in the application for the warrant. Another of the officers executing the search was called in as backup at the scene of the initial interaction with the suspects. These officers must be held to know, under the objective standard, of the attenuated link between the Monte Carlo and any criminal activity or the fruits thereof. Because the court holds the warrant was issued without probable cause, and because of the finding that the officers should have known that the search was illegal despite the magistrate's authorization, the good faith excep-

tion of *Leon* cannot be used to salvage this search.

Cases from other jurisdictions that have involved the particular exception to the good faith exception at issue here have arrived at conflicting results. Persuasive are the results such as that in *State v. Thompson,* 369 N.W.2d 363, 372 (N.D. 1985), which noted that "[u]nder *Leon,* the focus is not upon the magistrate's decision as is the case under *Gates,* but rather, the focus is upon the police decision to seek and then execute a certain warrant." The opinion also states:

> Analyzed in a commonsense, non-hypertechnical way, the affidavit in the instant case does not supply anything more than a most tenuous and conclusory suggestion that the Thompsons were involved in criminal activity. In our view, the investigation in *Leon* produced much more possibly incriminating information leading to a conclusion that a search warrant was justified than the investigation in this case. It is our conclusion that under these circumstances, the officer's reliance on the magistrate's determination of probable cause was objectively unreasonable, he having supplied the information on which the search warrant was issued, and therefore, under the third exception in *Leon,* exclusion of all evidence obtained in execution of the invalid search warrant is appropriate.

*Id.* The same result was obtained in *U.S. v. Granger,* 596 F.Supp. 665 (W.D.Wis. 1984) (later proceeding on other grounds, 777 F.2d 351 (7th Cir.1985)). The defendant Fountain, Granger and a third inmate were charged with stabbing a guard. The affidavit in support of a search warrant to examine Fountain's blood contained the following facts. The guard was found in a pool of blood in a particular cottage, and there was blood on the cell assigned to Granger and the defendant. An informant told the FBI agent the three defendants were seen hurrying from the area, and the defendant was wearing a blue zippered sweatshirt with blood on it was found in the cottage. *Id.* at 667. The court found the affidavit did not provide a substantial

basis for the magistrate to have concluded evidence relevant to the guard's death would be found in the defendant's blood. *Id.* at 669. The judge noted that if the warrant had been directed at Granger where the affidavit showed he was in the immediate vicinity of the crime, acting peculiarly only minutes after the crime had been committed and had blood and cuts on the palms of his hands, the warrant would have issued. *Id.* note 2. As to Fountain, the court said the mere fact Fountain had worn a blue sweatshirt did not provide the necessary corroboration, since it was possible such items were standard issue to all inmates, and there was no showing Fountain's was missing or the one found would fit him. The court rejected the government's reliance on objective good faith under *Leon. Id.* at 670, saying "no reasonably well-trained law enforcement officer would have been justified in relying on the warrant, knowing, as Staedtler did, of the paucity of information in the affidavit ..." *Id.* at 671. *See also, Herrington v. State,* 287 Ark. 228, 697 S.W.2d 899, 901 (1985), which held an affidavit with no reference to any time frame to be insufficient for a probable cause determination under the exception from *Leon* at issue here. Distinguishable on the facts is *United States v. Savoca,* 761 F.2d 292 (6th Cir.1985). The court there found a affidavit defective since it only tenuously connected the place to be searched with two persons for whom arrest warrants were outstanding and failed to describe the relationship of the persons to the premises. *Id.* at 297. While concluding that probable cause was not present, the court applied the good faith exception since a reasonably well trained officer could have concluded that one could infer from the type of evidence sought that it would be retained. *Id.* at 298. In the case under consideration, given the lack of direct suspicion concerning the Monte Carlo or its occupants, and, the lack of arrest warrants, the link is too tenuous for such inferences by the officers. *See also United States v. Merida,* 765 F.2d 1205 (5th Cir.1985), where *Leon* was applied even though an inadequate showing of a nexus between the items sought and the location

to be searched since officers are not expected to second guess the magistrate, particularly when the search warrant emanated in part from a grand jury indictment. Application of the "good faith" exception under the facts of this case would be inappropriate. *U.S. v. Diaz,* 656 F.Supp. 271, 276 (D.P.R.1987), the "good faith" rule of *Leon* should not save the day for the state in all cases where probable cause is lacking. *See State v. Crittenden,* 476 So.2d 632, 635 (Ala.1985), W. La Fave, Search and Seizure, A treatise on the Fourth Amendment, § 1, 3(f) pp's 71–77 (1987).

Even with giving due deference to the judge who issued the warrant, and no reason to punish the police for having obtained a warrant, and only requiring a "fair probability" of the finding of contraband, the court concludes the affidavits fall just short of the mark.

### III.

■ The state's point as to this being a valid inventory search subject to an arrest is not well taken. The additional points of Streit need not be considered.

The judgment is reversed for failure to suppress, and the cause is remanded for new trial.