**STATE of Missouri, Respondent,**

**v.**

**Curtis August WILBERS, Appellant.**

**No. WD 71947.**

Missouri Court of Appeals,
Western District.

June 28, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 2, 2011.

Application for Transfer Denied
Oct. 4, 2011.

Daniel J. Dodson, Jefferson City, MO, for appellant.

Shaun J. Mackelprang and Mary H. Moore, Jefferson City, MO, for respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding JAMES M. SMART, Judge, and DAREN L. ADKINS, Special Judge.

DAREN L. ADKINS, Special Judge.

The Defendant, Curtis Wilbers ("Wilbers") appeals his convictions in the Circuit Court of Cole County for the Class B Felony of possession of marijuana with the intent to distribute and the Class C Felony of possession of methamphetamine. Wilbers alleges in his sole point on appeal that there existed no probable cause for the issuance of the search warrant which resulted in the drug seizures and the filing of criminal charges for which he was convicted. We affirm.

### Standard of Review

This Court thoroughly addressed the appropriate standard when reviewing the denial of a Motion to Quash a search warrant and Motion to Suppress evidence in *State v. Henry*, 292 S.W.3d 358 (Mo.App. W.D. 2009). There, this Court held that only the issuing judge's initial determination of probable cause based on the information contained within the four corners of the affidavit is reviewed for error. *Id.* at 362. Here, the trial court's ruling on the Motion to Suppress is not under review. Our decision in *Henry* relied heavily on *State v. Neher*, 213 S.W.3d 44, 49 (Mo. banc 2007), in which the Missouri Supreme Court mandated that a reviewing court give "great deference to the initial judicial determination of probable cause that was made at the time the warrant issued." *Id.* "The duty of a reviewing court is simply to ensure that the issuing judge had a substantial basis for determining that probable cause for the search did exist." *Id.* "In conducting the review of whether probable cause exists, the appellate court may not look beyond the four corners of the warrant application and the supporting affidavits." *Id.* The rulings in *Neher* and *Henry* hold that this Court may reverse only if the "issuing magistrate or judge clearly erred in initially determining, based on the totality of the circumstances, that probable cause existed." *Id.*

### FACTUAL AND PROCEDURAL BACKGROUND

As we are constrained in our review to information presented to the issuing judge [1], the full text of the affidavit is set forth below:

### AFFIDAVIT SUPPORTING SEARCH WARRANT

Comes now B.L. Kyle, duly sworn and under oath states as follows:

1. I am an investigator with the Lake Area Narcotics Enforcement Group. I have been a police officer for approximately 10 years and for the past 8½ years, I have been assigned to the Lake Area Narcotics Enforcement Group as a Narcotics Investigator. During that time I have been involved in approximately 900 narcotics investigations.

2. Within the past 48 hours (as of 3:00 PM July 1, 2008), I have had contact with a confidential informant that has been inside the residence of Curtis A. Wilbers, located at 11127 Deer Run Road, Jefferson City, Mis-

1. The application for the search warrant provided no additional information upon which to base a finding of probable cause.

souri. The CI reported to me that while inside the residence, he/she observed Wilbers in possession of four bags containing methamphetamine. The CI has known Wilbers for at least five years and reports seeing Wilbers in possession of methamphetamine hundreds of times.

3. I have utilized information provided by this informant in the past and have found it to be reliable and true.

4. Through my experience as a Narcotics Investigator, I know that suspects keep controlled substances, paraphernalia, drug proceeds, records, documents and other items used to facilitate illegal narcotics activity. These individuals hide these items on their person, in their residence, vehicles and out buildings and I am requesting that the warrant include these areas.

5. The informant has informed me of the existence of weapons including firearms in this residence, and based on the nature of the illegal activity alleged and the presence of firearms, I am requesting a no-knock warrant.

6. In preparation of this affidavit, I contacted the Cole County Narcotics Investigator Steve Thompson and he advised me that the subject at 11127 Deer Run Road has also been under investigation by the his (*sic*) office.

/s/ *B.L. Kyle*

B.L. Kyle

Subscribed and sworn to me this date: July 1, 2008

/s/ *T. Sodergren*

---

**2.** Neither party supplied this Court with the transcript of those proceedings before the trial judge. The State does not dispute that the issue in this case was properly preserved for appeal.

JUDGE

The issuing judge witnessed both the affidavit signed by Investigator B.L. Kyle and the Application signed by Assistant Prosecuting Attorney, Steven M. Kretzer, and signed the warrant on July 1, 2008, at 3:45 pm. As a result of the subsequent search, the officers found methamphetamine, marijuana, guns, and various drug paraphernalia in Wilbers's home. Thereafter, the State charged Wilbers under Count I with the Class B Felony of possession of marijuana with the intent to distribute and under Count II with the Class C Felony of possession of methamphetamine. Wilbers filed his Motion to Quash the Search Warrant and to Suppress alleging, *inter alia*, that the warrant failed for lack of probable cause. The trial court, after a hearing, overruled said motion.[2] Following a bench trial, the Court convicted Wilbers on both counts and sentenced him to seven years imprisonment on Count I, and a concurrent three-year term on Count II.

Wilbers appealed his convictions. Wilbers argues the affidavit at issue here was insufficient to establish probable cause in that it failed to contain a specific date and time when the informant actually saw methamphetamine in Wilbers's home.

**Probable Cause Analysis**

■■ "The Fourth Amendment to the United States Constitution guarantees that no warrant shall issue except upon probable cause supported by oath or affirmation."[3] *Neher*, 213 S.W.3d at 48–49. "A neutral magistrate or judge must determine probable cause from the totality

---

**3.** Missouri's constitutional "search and seizure" provision, Article I, Section 15, is interpreted consistently with the Fourth Amendment of the U.S. Constitution. *State v. Tackett,* 12 S.W.3d 332, 337 (Mo.App. W.D. 2000).

of the circumstances." *Id.* at 49. "In determining whether probable cause exists, the issuing magistrate or judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her] ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* "The presence of such contraband or evidence need not be established, at a *prima facie* level, by a preponderance of the evidence or beyond a reasonable doubt." *Id.*

■■■ "Common sense is a key ingredient in considering the absence or presence of probable cause." *State v. Rush,* 160 S.W.3d 844, 849 (Mo.App. S.D.2005). "'[R]eliance upon factual allegations necessarily entails some degree of reliability upon the credibility of the source.'" *Illinois v. Gates,* 462 U.S. 213, 230 n. 6, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (*quoting Jaben v. United States,* 381 U.S. 214, 224, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965)). It is not required that "each factual allegation which the affiant puts forth must be independently documented, or that each and every fact which contributed to his conclusions be spelled out in the complaint." *Id.* (*quoting Jaben,* 381 U.S. at 224, 85 S.Ct. 1365). The concepts of "veracity," "reliability," and "basis of knowledge" are relevant considerations, but they are not entirely separate and independent requirements to be rigidly applied in every case. *Id.* at 230, 85 S.Ct. 1365. "Rather ... they should be understood simply as closely intertwined issues that may usefully illuminate the common sense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.*

■■■ Under the "totality-of-the-circumstances" method of analysis, "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing of the other or by some other indicia of reliability." *Id.* at 233, 85 S.Ct. 1365. In dealing with probable cause we deal with probabilities, not certainties. *Id.* at 231, 85 S.Ct. 1365. "These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id. See also State v. Buchli,* 152 S.W.3d 289, 305 (Mo.App. W.D.2004). "Search warrants, therefore, should not be deemed invalid 'by interpreting affidavits in a hyper technical rather than common sense manner.'" *Buchli,* 152 S.W.3d at 305 (*quoting State v. Hill,* 854 S.W.2d 814, 818 (Mo.App.1993)). "The preference for warrants that requires us to give deference to the issuing judge's determination of probable cause also requires some latitude in interpretation of the supporting affidavit." *State v. Trenter,* 85 S.W.3d 662, 677 (Mo. App. W.D.2002). "Even when the sufficiency of an affidavit is marginal, our determination should be informed by the preference accorded to warrants." *Id. See Hill,* 854 S.W.2d at 818.

■■■ "Rigid legal rules are ill-suited to an area of such diversity." *Gates,* 462 U.S. at 232, 103 S.Ct. 2317. "'One simple rule will not cover every situation.'" *Id.* (*quoting Adams v. Williams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)). "The affidavit in support of a search warrant should be weighed as understood by those versed in law enforcement and not in terms of library analysis by scholars." *State v. Henry,* 292 S.W.3d 358, 364 (Mo. App. W.D.2009) (*citing Gates,* 462 U.S. at 232, 103 S.Ct. 2317). "[A]ffidavits are normally drafted by non-lawyers in the midst and haste of a criminal investigation.'" *Gates,* 462 U.S. at 235, 103 S.Ct. 2317 (*quoting U.S. v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)).

■■■ Deference to the issuing court is not, however, without limit. *See, e.g.,*

*Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). "Reviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *United States v. Leon,* 468 U.S. 897, 915, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (*quoting Gates,* 462 U.S. at 239, 103 S.Ct. 2317). A common-sense reading does not allow a judge to "read things into the affidavit that simply are not there." *Trenter,* 85 S.W.3d at 676. "Sufficient information must be presented to the magistrate to allow that official to determine probable cause." *Gates,* 462 U.S. at 239, 103 S.Ct. 2317. "Even if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances." *Leon,* 468 U.S. at 915, 104 S.Ct. 3405 (*citing Gates,* 462 U.S. at 238–39, 103 S.Ct. 2317).

▪▪▪ Wilbers argues the affidavit at issue here was insufficient because it failed to contain a specific date and time when the informant actually saw methamphetamine in Wilbers's home.

> [P]robable cause to search exists when, *at the time* the magistrate issues the warrant, there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of crime and will be present *at the time and place* of the search.

*State v. Erwin,* 789 S.W.2d 509, 510 (Mo. App. S.D.1990) (*emphasis added*). *See also United States v. Greany,* 929 F.2d 523, 524–25 (9th Cir.1991) ("the facts must be sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued").

The affidavit of Investigator Kyle stated only that he spoke with the confidential informant "[w]ithin the past 48 hours (as of 3:00 PM July 1, 2008)." As Wilbers correctly points out, and the State concedes in its brief, the affidavit did not state when the confidential informant saw the contraband in Wilbers's possession. It may be argued that the phrase "[w]ithin the last 48 hours" referred to the time of observation by the informant. That the affiant may or may not have intended such a reading cannot now be before the court. And, while it is true that this Court should not engage in a hyper-technical review of the affidavit, it cannot and should not ignore the plain meaning of the words and phrases within it. That the confidential informant provided information to the affiant "within the past 48 hours", as he simply and clearly stated, is relevant only insofar as it can be determined when Kyle obtained that information. Here there simply is no such time-connected information referring the reader as to the date the informant actually observed the methamphetamine in Wilbers's possession.

In *Staker v. United States,* the court stated: "[A]lthough in fact the affidavit was made immediately after the facts were discovered, the affidavit itself is silent as to the time element. So far as the affidavit shows, the officer might have smelled the fumes months before the affidavit was made." 5 F.2d 312, 314 (6th Cir.1925). "[The affidavit] speaks, after all, of the time when an anonymous informant conveyed information to the officer, which could have been a day, a week, or months before the date of the affidavit. To make a double inference, that the undated information speaks as of a date close to that of the affidavit and that

therefore the undated observation made on the strength of such information must speak as of an even more recent date would be to open the door to the unsupervised issuance of search warrants on the basis of aging information."

*Rosencranz v. United States*, 356 F.2d 310, 316 (1st Cir.1966).

Here too, the fact that illegal substances were observed at a particular location at some unidentified time in the past, without more, does not establish probable cause required to search those premises. The actual observation date could have occurred from 48 hours up to five years prior to the informant's conversation with Investigator Kyle within 48 hours of July 1, 2008, and there is nothing to indicate otherwise. We must, at this point, take the affidavit as presented without more, and presume its contents are truthful subject to the penalties for perjury.[4]

In *State v. Woods*, 790 S.W.2d 253 (Mo. App. S.D.1990) the Southern District of this Court found no probable cause existed for the issuance of a search warrant because the affidavit supplied no date and/or time when the informant saw the contraband. The Court wrote:

The trial court's finding that a marijuana remnant, a "roach," was not referred to as to time, date or place in the affidavit for a search warrant is supported by the evidence. The reference in the affidavit to observations "[t]hat the informant [Warner] further told your affiant [the sheriff] that he had observed cocaine, marihuana, and drug paraphernalia, in the aforementioned residence on at least one prior occasion," without fur-

ther specificity, does not supply probable cause.

*Id.* at 261.

 The State argues that even if Kyle's affidavit lacked a time reference, the remainder of the statements within it supplied sufficient probable cause. "It is well-settled that information about criminal activity at an earlier, unspecified time may combine with factually connected, recent, time-specific information to provide a substantial basis for the conclusion that the criminal activity described in an affidavit is sufficiently close in time to the search warrant application." *United States v. Day*, 949 F.2d 973, 978 (8th Cir. 1991). *See also State v. Ambrosio*, 632 S.W.2d 262, 265 (Mo.App. E.D.1982). The remainder of the affidavit supplies little to support the State's position.

Even Investigator Steve Thompson's statement within the affidavit that asserted "[Wilbers] *has also been* under investigation by the (sic) his office" (emphasis added) adds no present-time, relevant information to tie past observations to current, ongoing events. From an ordinary reading of the affidavit, nothing connects in any way the "hundreds" of earlier, unspecified observations of contraband to anything "recent" or "time-specific." *See Day*, 949 F.2d at 978.

In *State v. Cornelius*, 1 S.W.3d 603 (Mo. App. S.D.1999), the Southern District upheld the issuing court's finding of probable cause in a case factually similar to that presented here. There, the affidavit stated, in pertinent part:

Within the last twenty-four (24) hours, I was contacted by a reliable, cooperating individual who has given reliable information in the past which has resulted in

4. As neither party alleged that Investigator Kyle attempted to intentionally mislead or deceive the issuing judge with his affidavit, the mandates of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), on remand *Franks v. State*, 398 A.2d 783 (Del. 1979) were not applicable here.

several arrests, convictions and drug related seizures. He/She stated that at this residence located on Rt. 0, the first residence South and East of U.S. 160 in Greenfield, Missouri, he/she had knowledge of methamphetamine, drug paraphernalia and marijuana being stored inside the residence and metal outbuilding.

*Id.* at 606. The affidavit in *Cornelius*, as here, merely recited that the affiant received information from a confidential informant within a specific time-frame—not that the informant observed or received this information within that time. However, in *Cornelius* the affiant then provided very specific, detailed locations of where each of the items of contraband (methamphetamine, marijuana, and scales) were hidden within the metal building and residence. As stated in *Gates*, under the "totality-of-the-circumstances" method of analysis, "a deficiency in one [area] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." 462 U.S. at 233, 103 S.Ct. 2317. Investigator Kyle's affidavit contained no such details beyond the informant's observation of Wilbers with "four bags containing methamphetamine" at some unknown time. "Probable cause must exist when a warrant is issued, not merely at some earlier time." *United States v. La Morie*, 100 F.3d 547, 554 (8th Cir.1996).

 Cases that have reviewed the sufficiency of affidavits on the basis of when critical information was obtained are numerous.[5] "The police will ... encounter problems of 'staleness' of their information if they delay too long in seeking a search warrant." *United States v. Watson*, 423 U.S. 411, 450 n. 14, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). The issue here is not even a question of staleness which requires in most cases a consideration of the type of contraband sought.

> [T]he likelihood that evidence sought is still in place is a function not of a watch or calendar, but of the character of the crime, of the criminal, of the thing seized or of the place searched. As such, courts have been more tolerant of dated allegations when the evidence sought is of the sort that can reasonably be expected to be kept for long periods of time in the place to be searched.

*State v. Pattie*, 42 S.W.3d 825, 828 (Mo. App. E.D.2001) *(internal citations omitted)*. Generally, a shorter time-frame is required between the observation of contraband and the issuance of a search warrant if the contraband is consumable, such as methamphetamine, recognizing that "the hare and tortoise do not disappear at the same rate." *Id.* *(quoting Andresen v. State*, 24 Md.App. 128, 331 A.2d 78, 106 (Md.Ct.Spec.App.1975)). Courts have rejected the application of a bright-line test to determine at what point information is stale, noting "[t]ime factors must be examined in the context of a specific case and the nature of the crime under investigation." *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir.2007) *(quoting United States v. Koelling*, 992 F.2d 817, 822 (8th Cir.1993)). The breadth of analysis in this area emphasizes the importance our courts place on knowing when the criminal behavior occurred to determine probable cause. This court cannot ignore an affiant's complete failure to denote when the informant observed the illegal

5. *See, e.g., U.S. v. Morrison*, 594 F.3d 626 (8th Cir.2010); *U.S. v. Fairchild*, 774 F.Supp. 1544 (W.D.Wis.1990); *State v. Williams*, 9 S.W.3d 3 (Mo.App. W.D.1999); *State v. Keller*, 870 S.W.2d 255 (Mo.App. W.D.1994). *See also* Rachel A. Campbell, Annotation, *When Are Facts Offered in Support of Search Warrant for Evidence of Federal Drug Offense So Untimely As To Be Stale*, 13 A.L.R. Fed.2d 1 (2006).

activity described. Neither can we supply the missing information by inference or assumption as suggested by the State. *See Trenter*, 85 S.W.3d at 676.

This Court, in reviewing the totality of circumstances in a common-sense manner, cannot find, even giving great deference to the issuing judge, "a substantial basis for determining that probable cause for the search did exist." *See Neher*, 213 S.W.3d at 49. Surely a simple recitation of when the observation of illegal activity or contraband occurred is necessary. That this issue appears so infrequently in our case law indicates that the vast majority of law enforcement is aware of its necessity. "Police officers have long been accustomed to the importance of time; to their credit, the overwhelming majority of affidavits have honored the requirement." *Rosencranz*, 356 F.2d at 317. To require the inclusion within the affidavit of a specific time, or time frame, when the illegal activity or contraband was observed is not hyper-technical, but rather fundamental in the probability determination. *Id.* Should this affidavit be allowed to pass as sufficient in this matter, officers would be able to simply avoid statements relating to specific dates in favor of generalized anecdotes of informants to obtain search warrants. Ratification of an issuing court's finding of probable cause based upon an affidavit absent any mention as to when the informant made the observations would relegate trial and appellate court review in this area to a rubber stamp. "To conclude otherwise would be to condone an error so fraught with the potential for abuse as to seriously undermine the constitutional protections afforded by the Fourth Amendment." *United States v. Elliott*, 576 F.Supp. 1579, 1581 (W.D.Ohio 1984). Therefore, this Court finds the issuing judge's probable cause determination to issue the search warrant clearly erroneous.

## Good–Faith Exception Analysis

 The State urges this Court to forego application of the exclusionary rule and employ the "good-faith exception" as outlined in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), and adopted in Missouri in *State v. Sweeney*, 701 S.W.2d 420 (Mo. banc 1985).

> Both *Leon* and *Sheppard* deal with situations where police officers acted in reliance upon search warrants that subsequently were held to be defective. In other words, the judge or magistrate, not the police made the critical mistake. *Sheppard*, 104 S.Ct. at 3429. In those situations the fourth amendment does not mandate suppression of the evidence "particularly where an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted *within its scope*." (*Emphasis added.*) *Leon*, 104 S.Ct. at 3420. "[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 104 S.Ct. at 3418. (Emphasis added.)

*State v. Varvil*, 686 S.W.2d 507, 511 (Mo. App.1985).

 The U.S. Supreme Court explained their reasoning for the exception as "the marginal or nonexistent benefits produced by suppressing evidence obtained in reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial cost of exclusion." *Leon*, 468 U.S. at 922, 104 S.Ct. 3405. Further, the marginal *future-deterrent* value of excluding the evidence does not justify the exceedingly-high cost to society in "... letting guilty and possibly dangerous defendants go free...." *Id.* at 908, 104 S.Ct. 3405. (Emphasis added.) "[T]he [exclusionary] rule's costly toll upon truth-

**562**

seeking and law enforcement objectives presents a high obstacle for those urging [its] application." *Parole v. Scott,* 524 U.S. 357, 365, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). Most recently the Supreme Court in *Herring v. United States,* 555 U.S. 135, 143–44, 129 S.Ct. 695, 702, 172 L.Ed.2d 496 (2009) further limited application of the exclusionary rule and expanded those situations in which the good-faith exception will apply when they held:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.[6]

▮▮▮ Suppression remains an appropriate remedy in four situations:

1) if the affiant provides information he knows or should know is false;

2) the magistrate wholly abandons his judicial role;

3) if the affidavit is so lacking in probable cause as to render official belief in its existence entirely unreasonable; or

4) if the warrant is so facially deficient the executing officers cannot reasonably presume it to be valid.

*State v. Brown,* 741 S.W.2d 53, 59 (Mo. App.1987), (*quoting Leon,* 104 S.Ct. at 3421).

Wilbers argues for application of the third exception, so our analysis will be limited thereto. The question of good-faith to be decided here, based on an objective standard, is whether the affidavit so lacks indicia of probable cause that it would be entirely unreasonable for a reasonably well-trained officer to rely upon it.

Officer Kyle's affidavit provides a statement of his law enforcement experience, the past reliability of the confidential informant, a prior investigation of Wilbers by law enforcement, and possession by Wilbers of a controlled substance at some unknown or unstated time. That the affidavit falls short of the probable cause threshold, given the absence of a time-specific observation of criminal behavior, qualifies this as a close case. However, a reasonably well-trained officer's reliance on this poorly-drafted affidavit cannot be considered *entirely* unreasonable.[7]

That there could be some future-deterrent value in suppressing the evidence here is not debatable. "[W]e do not suggest that the exclusion of this evidence could have no deterrent effect. But our cases require any deterrence to "be weighed against the 'substantial social costs exacted by the exclusionary rule,' " and here exclusion is not worth the cost." *Herring,* 555 U.S. at 144 n. 4, 129 S.Ct. at 702 n. 4 (internal citations omitted and emphasis added). As the error found in this case rests not on the officer, but rather on the issuing court, the good-faith exception applies.

Therefore, for all the reasons stated above, the evidence obtained as a result of the invalid search warrant is admissible by application of the good-faith exception to the exclusionary rule.

---

**6.** There is nothing in the record before this Court to indicate that Officer Kyle acted deliberately or recklessly, or of the existence of systemic or recurring actions by his investigative unit requiring the deterrent sanction of evidence exclusion.

**7.** Entirely is defined as "absolute and unqualified" and "wholly and completely." Webster's Dictionary.

## Conclusion

For the reasons stated herein, we affirm.

All concur.