**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Michael R. JONES, Defendant–
Appellant.**

**No. SD 31291.**

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 19, 2012.

Daniel D. Brogdon, for appellant.

Chris Koster, Shaun J. Mackelprang, for respondent.

NANCY STEFFEN RAHMEYER, J.

Michael R. Jones ("Appellant") was charged with ten counts of possession of child pornography, each a class C felony, and with one count of possession of more than twenty still images of child pornography, a class B felony, all in violation of section 573.037.[1] The case was tried to a jury on January 18 and 19, 2011, and the jury returned a verdict of guilty on each count on January 19, 2011. On April 12, 2011, the trial court sentenced Appellant to

1. All references to statutes are to RSMo Cum. Supp.2008, unless otherwise specified.

imprisonment in the county jail for one month on each of counts 1 through 10, and imprisonment in the Department of Corrections for seven years on count 11 with the sentences to run concurrently. Appellant appeals the trial court's judgment, and raises two points in which he challenges the trial court's denial of his motion to suppress: (1) the physical evidence obtained in a search of his home and premises pursuant to a search warrant, and (2) statements he made in the course of the execution of the search warrant. Finding no merit in Appellant's points, we affirm the trial court's judgment.

### Facts and Procedural History

Viewed in accordance with our standard of review, the evidence established the following facts:

Pamela Jones, Appellant's daughter-in-law, lived at Appellant's home in Webster County from August 2005 until about July 2006, and then again from about November 2007 until about January 2008. She has a son who was two at the time of the hearing and lived with Pamela for at least a portion of the time Pamela lived at Appellant's home. While Pamela lived in Appellant's home, there was a computer in the game room of the home. Pamela used the computer.

Once, when Pamela was in the game room, she saw "future pre-teens" on the "tab" for a screen on the computer that was "minimized." When Appellant left, Pamela went through the "history of the computer" and saw there were "a lot of sites like that." Pamela subsequently went to the Sheriff's Department, completed a witness statement, and talked to one of the deputies.

Pamela returned home, waited until "they were gone," and then went through Appellant's "porn." Pamela and her husband then took some of the pictures back to the Sheriff's Department because she "wanted them to have proof." The Sheriff's Department did not request that she bring pictures to the Sheriff's Department. The pictures were already printed when Pamela found them—she did not print any of the pictures. She testified that Appellant "always keeps porn in the house, there is always porn." By "porn," Pamela meant "naked pictures of girls[, v]ideos, pornography. Like, people engaging in sex." Appellant "usually keeps" images of girls eighteen and older, but Pamela "find[s] a lot younger girls" as well.

John Everett, a Detective with the Webster County Sheriff's Office, felt the pictures she brought to the Sheriff's Office "were criminal." There "was no question in [Detective Everett's] mind" that "several [of the pictures] ... were sexually explicit photos of children under the age of 17." These pictures "were obscene." At some point, Detective Everett discussed the pictures and "review[ed] the elements of the crime" with the Webster County prosecuting attorney and prepared an application for a search warrant for Appellant's home and premises in Webster County, a supporting affidavit for the application, and a proposed search warrant. He submitted those documents to an associate circuit judge on July 1, 2008.

The supporting affidavit included the following facts:

Detective Everett had "reason to believe" evidence of "a crime, to wit: Child Pornography, RSMO 573.037, is presently concealed at" Appellant's residence.

Detective Everett spoke with Pamela Jones on July 1, 2008. Pamela Jones told Detective Everett (1) Appellant is her father-in-law, (2) "[she] had observed photographs of various children on the computer at [Appellant's] residence," (3) "children in the photographs

were nude and/or in various stages of undress," (4) "she believed some of the photographs were of children between the ages of three to four years of age," and (5) "the photos she had delivered to the Webster County Sheriff's Office were photos she had taken from [Appellant's] residence," and "had been printed prior to her discovery of them."

Detective Everett "observed the photos Pamela brought to the Sheriff's Office. Some of the children in the photos appeared to be well under seventeen years of age." "[T]he children in the photographs were naked and/or in various stages of undress."

When Detective Everett first arrived at Appellant's home to execute the search warrant, he observed Appellant outside his home and the two met about halfway between where Detective Everett parked and Appellant's home. Detective Everett "greeted" Appellant and informed him Detective Everett had a search warrant and showed Appellant the warrant. Detective Everett then asked Appellant "where his kiddie porn was located." Appellant asked "what do you mean by kiddie porn," and Detective Everett replied "pornographic pictures of underage children." Appellant then said "it was in the house." At this time, Detective Everett and Appellant were standing about four to five feet apart. Two other law enforcement officers were arriving at Appellant's home, but "were some distance behind [Detective Everett] at that time." No weapons were drawn though Detective Everett was armed and his weapon would have been visible to Appellant. Detective Everett's demeanor was not threatening or angry at that time or at any other time during the search. Detective Everett was not dressed in "tactical gear."

Detective Everett added that (1) the execution of the search warrant occurred during daylight, (2) there were four (rather than two) law enforcement officers with Detective Everett during the search, (3) the officers did not have their vehicle lights or sirens on when they arrived at Appellant's home, (4) the officers and Appellant were "cordial," (5) all the officers had weapons and badges but no officer drew his weapon, (6) "[n]ormally" Detective Everett does not "read someone their rights unless they are in my custody, and I am asking guilt seeking questions," and (7) Appellant was not placed under arrest at any time during the search or on the day of the search.

Appellant and the officers then went into Appellant's home where the officers again asked Appellant where the "sexually explicit photos" of the "underage children" were located. Appellant retrieved photographs from a drawer.

After Rick Hamilton, a detective with the Webster County Sheriff's Department, observed what he thought to be child pornography, he "chose at that time to go ahead and *Mirandize*"[2] Appellant after they returned to the living room from the back room. "[U]sually," Detective Hamilton does not "*Mirandize*" an individual until he has "located" evidence of a crime. Detective Hamilton's memory was that "the only thing we talked about prior to *Miranda* was what we were there for. And he made the statement, you know everything I got is back here and took officers back to that room." Detective Hamilton added that (1) he was "cordial" to Appellant and Appellant "was very nice to us as well," and (2) Appellant "led us" into the house. Appellant did not invoke his right to remain silent or his right to counsel after being advised of his *Miranda* rights. So far as Detective Hamilton was

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

aware, Appellant's statements after he was advised of his rights were recorded.

Evidence seized during the execution of the search warrant at Appellant's home was introduced into evidence at trial, including (1) a computer, and images and internet searches and websites found on the computer, (2) photographs located in a drawer in a bedroom at Appellant's home, and (3) photographs located in a box or boxes in an outbuilding at Appellant's home. A recording of Appellant's post-*Miranda* statements during the search also was introduced into evidence and played for the jury.[3]

■ In his first point, Appellant claims the trial court "clearly erred in overruling" his motion to suppress physical evidence and objections to admission of that evidence at trial because the evidence was obtained "pursuant to a search warrant that was not supported by probable cause." Appellant's argument is that "the Affidavit failed to establish probable cause that evidence of a crime would be located at Appellant's residence" because the affidavit that supported the search warrant contained "no allegation" that the conduct depicted in the photographs referenced in the affidavit met the definition of child pornography.

In *State v. Neher*, 213 S.W.3d 44 (Mo. banc 2007), our Supreme Court described the standard of review as:

The Fourth Amendment to the United States Constitution guarantees that no warrant shall issue except upon probable cause supported by oath or affirmation. *State v. Berry*, 801 S.W.2d 64, 66 (Mo. banc 1990). A neutral magistrate or judge must determine probable cause

from the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In determining whether probable cause exists, the issuing magistrate or judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her] ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* The presence of such contraband or evidence need not be established at a prima facie level, by a preponderance of the evidence or beyond a reasonable doubt. *State v. Laws*, 801 S.W.2d 68, 70 (Mo. banc 1990).

Accordingly, in reviewing a trial court's ruling on a motion to suppress evidence seized pursuant to a search warrant, the court gives great deference to the initial judicial determination of probable cause that was made at the time the warrant issued. *Berry*, 801 S.W.2d at 66. Because there is a strong preference in the Fourth Amendment for searches to be conducted pursuant to a warrant, a reviewing court should not quash a warrant by construing it in a hypertechnical, rather than a common-sense, manner. *Gates*, 462 U.S. at 235–36, 103 S.Ct. 2317. The duty of a reviewing court is simply to ensure that the issuing judge had a substantial basis for determining that probable cause for the search did exist. *Id.* at 238, 103 S.Ct. 2317. In conducting the review of whether probable cause exists, the appellate court may not look beyond the four corners of the warrant application and the supporting affidavits. *Laws*, 801 S.W.2d at 70 n. 1. The court will only reverse if the issuing magistrate or

---

3. We do not know what was said on the recording as the recording was not deposited with us and was not included in the transcript when played at trial. In closing arguments, both the prosecutor and defense counsel indicated that Appellant could be heard laughing on the recording.

judge clearly erred in initially determining, based on the totality of the circumstances, that probable cause existed. *State v. Norman*, 133 S.W.3d 151, 159 (Mo.App.2004).

*Id.* at 48–49. In addition, although the meaning of probable cause is a question of law, the existence or not of probable cause in a specific case is a question of fact. *State v. Berry*, 801 S.W.2d 64, 66 (Mo. banc 1990). Missouri's constitutional prohibition of unreasonable searches and seizures, set forth in article I, section 15 of the Missouri Constitution, is interpreted consistently with the Fourth Amendment to the United States Constitution. *State v. Wilbers*, 347 S.W.3d 552, 556 n. 3 (Mo.App. W.D.2011).

At the time of the search on July 1, 2008, it was a crime to possess "any child pornography of a minor under the age of eighteen" under section 573.037.1. Section 573.010.(2)(b)a and (18)e, RSMo Cum. Supp.2006, defined "child pornography" to include "[a]ny visual depiction ... where ... [t]he production of such visual depiction involves the use of a minor engaging in" the "[l]ascivious exhibition of the [minor's] genitals or pubic area[.]" Section 573.010(10)RSMO Cum.Supp.2006 defined "[m]inor" as "any person under the age of eighteen[.]"

Although the affidavit did not state specifically that the minor children depicted in the photographs referenced in the affidavit were engaged in the lascivious exhibition of their genitals or pubic area, the affidavit did make clear that the minor children were "nude" or "naked" "and/or in various stages of undress." The fact that a deputy spoke directly to Pamela Jones, who gave the deputy the information concerning what was on the computer, and what the detective observed in the photographs adds to the inference that there was probable cause to believe the photographs violated section 573.037. We believe the facts the minor children were "nude" or "naked" "and/or in various stages of undress" provided a substantial basis for the issuing judge's practical, common-sense determination that there was a fair probability child pornography or evidence of the possession of child pornography would be found at Appellant's home. Certainly, the issuing judge did not clearly err in determining that probable cause existed based on the totality of the circumstances. Appellant's first point is denied.

■ In his second point, Appellant claims the trial court "clearly erred in overruling" Appellant's motion to suppress his statements made in the course of the execution of the search warrant in two respects. First, that Appellant's initial statement "it was in the house" in response to Detective Everett's questions about where Appellant's "pornographic pictures of underage children" were located should have been suppressed because Appellant, at that time, was in custody and had not been advised of his *Miranda* rights. And, second, Appellant's subsequent, *post-Miranda* statements were involuntary because elicited in a deliberate attempt to undermine the *Miranda* warning by first eliciting unwarned and inadmissible, incriminating statements. We disagree.

■ Our Supreme Court has described our standard of review as:

In reviewing a trial court's ruling on a motion to suppress, there must be "substantial evidence" to support the ruling. *State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998). "[T]he facts and reasonable inferences from such facts are considered favorably to the trial court's ruling and contrary evidence and inferences are disregarded." *State v. Galazin*, 58 S.W.3d 500, 507 (Mo. banc 2001)

(citing *State v. Kinkead*, 983 S.W.2d 518, 519 (Mo. banc 1998)).

In "reviewing the trial court's overruling of a motion to suppress, this Court considers the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling." *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005). "Deference is given to the trial court's superior opportunity to determine the credibility of witnesses." *Rousan*, 961 S.W.2d at 845. This Court gives deference to the trial court's factual findings but reviews questions of law *de novo*. *Id.*

*State v. Gaw*, 285 S.W.3d 318, 319–20 (Mo. banc 2009). The question of whether an individual is "in custody" for purposes of the Fifth Amendment to the United States Constitution presents a mixed question of law and fact. The trial court's determination of witness credibility and findings of historical fact are questions of fact to which we defer. *Id.* Whether the historical facts result in the individual being in custody is a question of law that we review *de novo*. *State v. Werner*, 9 S.W.3d 590, 595 (Mo. banc 2000); *State v. Sardeson*, 220 S.W.3d 458, 464–65 (Mo.App. S.D. 2007); *State v. Brooks*, 185 S.W.3d 265, 273–74 (Mo.App. W.D.2006). We analyze the privilege against self-incrimination under the Missouri Constitution consistently with the analysis of this privilege under the United States Constitution. *State v. Quick*, 334 S.W.3d 603, 611 (Mo.App. W.D. 2011).

■■ A law enforcement officer may warn an individual of the individual's rights under *Miranda* at any time, but the officer has no legal duty to warn the individual of those rights until the individual is "in custody" even when the officer's investigation has focused on the individual and the officer would like to question the individual. *Brooks*, 185 S.W.3d at 273, 276–77, 280–81; *Quick*, 334 S.W.3d at 611–12; *Sardeson*, 220 S.W.3d at 465, 468–69. "[I]n the absence of arrest or restraint of freedom of movement, questioning that takes place in a coercive environment does not require *Miranda* warnings." *State v. Glass*, 136 S.W.3d 496, 511 (Mo. banc 2004) (internal quotation omitted).

■■ The determination of whether an individual is in custody is based on "an examination of the totality of the circumstances." *Quick*, 334 S.W.3d at 612 (internal quotation omitted). Though the phrasing of the legal standard for custody varies somewhat from decision to decision, the ultimate inquiry is whether a "reasonable person" in the individual's "position would have understood" (*Id.*) he was under formal arrest or the "functional equivalent" of formal arrest (*Id.* at 614, 616) or under "restraint on freedom of movement of the degree associated with a formal arrest," or would "have felt he or she was not at liberty to terminate the interrogation and leave." *State v. Hill*, 247 S.W.3d 34, 47 (Mo.App. E.D.2008) (internal quotations and citations omitted); · *see also Brooks*, 185 S.W.3d at 273 ("In deciding whether a suspect is 'in custody' at a particular time, courts examine the extent of the restraints placed on the suspect during the interrogation in light of whether a reasonable person in the suspect's position would have understood the situation to be one of custody."); *Sardeson*, 220 S.W.3d at 468–69 ("[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.") (internal quotation omitted); *Glass*, 136 S.W.3d at 508 ("A custodial interrogation occurs only when the suspect is formally arrested or is subjected to arrest-like restraints.").

Here, Detective Everett simply introduced himself and told Appellant why he was there. It was daylight when Detective Everett and four other law enforcement officers arrived at Appellant's home to execute a search warrant for Appellant's home and premises. The sirens and lights on the officers' vehicles were not activated. The search warrant authorized only the search of Appellant's home and premises, and did not authorize the search or restraint of Appellant or any other person. When Detective Everett first arrived at Appellant's home to execute the search warrant, he observed Appellant outside his home and the two met about halfway between where Detective Everett parked and Appellant's home. Detective Everett "greeted" Appellant and informed him Detective Everett had a search warrant and showed Appellant the warrant. Detective Everett then asked Appellant "where his kiddie porn was located." Appellant asked "what do you mean by kiddie porn," and Detective Everett replied "pornographic pictures of underage children." Appellant then said "it was in the house." At this time, Detective Everett and Appellant were standing about four to five feet apart. The other law enforcement officers were arriving at Appellant's home, but "were some distance behind [Detective Everett] at that time." No weapons were drawn though Detective Everett was armed and his weapon would have been visible to Appellant. Detective Everett's demeanor was not threatening or angry at that time or at any other time during the search. The officers and Appellant were "cordial."

Appellant then "led" the officers into Appellant's home where the officers again asked Appellant where the "sexually explicit photos" of the "underage children" were located. Appellant stated "everything that I have is in the back room," and then led the officers to a back room where Appellant retrieved photographs from a drawer. After Detective Hamilton observed what he thought to be child pornography, he advised Appellant of his *Miranda* rights. Appellant was not placed under arrest at any time during the search or on the day of the search.

A reasonable person in Appellant's position would understand he was not in custody prior to the *Miranda* warning. The trial court did not err in denying Appellant's motion to suppress Appellant's unwarned statements.

In view of our decision that the trial court did not err in denying Appellant's motion to suppress Appellant's unwarned statements, we do not need to address Appellant's claim that his *post-Miranda* statements were involuntary because elicited in a deliberate attempt to undermine the *Miranda* warning by first eliciting unwarned and inadmissible, incriminating statements. *Sardeson*, 220 S.W.3d at 469–70; *see also Gaw*, 285 S.W.3d at 322–24, 325 (*post-Miranda* statements that are knowingly and voluntarily made are excluded only if elicited in a deliberate attempt to undermine the *Miranda* warning by first eliciting unwarned and inadmissible, incriminating statements). Appellant's second point is denied.

The trial court's judgment is affirmed.

GARY W. LYNCH, P.J. and WILLIAM W. FRANCIS, JR., J., concur.