

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD77725 (Consolidated with WD77723) |
| | ) | |
| MATTHEW S. ROUCH, | ) | Opinion filed:  December 16, 2014 |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF NODAWAY COUNTY, MISSOURI**
**The Honorable Roger M. Prokes, Judge**

Before Special Division:  Zel Fischer, Special Judge Presiding,
Joseph M. Ellis, Judge and Victor C. Howard, Judge

The State of Missouri brings this interlocutory appeal challenging an order issued in the Circuit Court of Nodaway County granting Matthew Rouch's motion to suppress evidence discovered and seized as a result of the execution of a warrant to search his home.  For the following reasons, the trial court's ruling is affirmed.

On September 3, 2013, Northwest Missouri State University Police Chief Clarence Green, Jr. was interviewed over the telephone by a student reporter for a story for the Northwest Missourian newspaper.  During the course of that interview, the reporter claimed that a faculty member had indicated in a Facebook post that he would climb up in the bell tower on campus and shoot students.  Chief Green asked the

reporter for the name of the faculty member and a copy of the reporter's screenshot printout of the Facebook post but the reporter refused to provide them. The following day, Chief Green applied for and received a warrant to search the office and file storage area of the Northwest Missourian for evidence related to the Facebook post.

Upon executing that warrant, Chief Green seized a printout of a Facebook post by Rouch, who was a professor in the communications department, which stated:

> But, yes. That's the beginning of the semester. I'm always optimistic. By October, I'll be wanting to get up to the top of the bell tower with a high powered rifle – with a good scope, and probably a gatling gun as well.

Chief Green then contacted and questioned Rouch about the Facebook post. Rouch admitted making the post and stated that it was a sarcastic, flippant comment meant as a humorous response to statements made by a colleague.[1] When asked if he owned any weapons, Rouch said that he had a pellet gun at home. When interviewed, the colleague to whom Rouch had made the statement indicated that she thought Rouch's statement was in bad taste but that it was meant as a joke.

---

[1] Rouch signed a written statement providing:

> Last Wednesday, I responded to a comment by Jody Stauch on facebook [sic]. The essence of Jody's comment was that she kind of felt it was pointless when people ask her how the semester was going when it was only the third day.
>
> My response, which I thought was humorous, was along the lines of I was always okay the first week; that is was [sic] toward end of October that I felt like going up in the belltower [sic] with a high powered rifle and scope and a Gatling gun. I was trying to be humorous – just saying it was always the middle of the semester when I was the most stressed, like every other faculty.
>
> Jody joked back something like "attention NSA, I do not know this man." I gave it a thumbs up.
>
> An hour later, I looked, and Jody had about 7 thumbs up on her comment. There were none on mine. So I wrote another comment. "Uh, I hope everyone knows I was just kidding." Nobody responded to that. So I wrote one final one, "Uh, I guess not."
>
> About five minutes after that a [sic] deleted all three of my comments.

The following day, an administrator called Chief Green and told him that a professor, Dr. Walker, had heard Rouch say something about bringing a bomb on campus. When questioned by Chief Green, Dr. Walker said he had overheard Rouch make a comment like: "Yesterday they thought it was a gun. Today I've brought a bomb." Chief Green had Rouch taken into custody. When questioned, Rouch admitted making the comments, which he again maintained were flippant and meant as a sarcastic joke. After questioning Rouch, Chief Green placed Rouch under a 24-hour investigative hold for making terroristic threats. The campus building Rouch had been in was searched for a bomb but none was found. All of Rouch's co-workers and colleagues that were interviewed by Chief Green about Rouch's comments indicated their belief that the comments were made flippantly and meant to be jokes.

After interviewing Rouch and his colleagues, Chief Green contacted the prosecuting attorney to seek a warrant to search Rouch's home for firearms. The Complaint for Search Warrant, filed by the county prosecuting attorney, asked for a warrant to search Rouch's home for "a rifle with a scope, a gatling gun, or other firearms capable of lethal use," which were generically said to be "evidence of a criminal offense." Similarly, in the affidavit in support of the warrant complaint, Chief Green asked the court to issue a warrant to search Rouch's home for "a rifle with a scope, a gatling gun, or other firearms capable of lethal use." In support of that request, Chief Green stated:

> On Wednesday, September 4, 2013, in the morning, [a student reporter for the Northwest Missourian newspaper] called and spoke with Chief Clarence Green at the University Police Station claiming he was doing a story about posts on social media. During the course of the conversation, [the reporter] admitted to Chief Green that [the reporter] saw and printed a post from social media coming from a University professor that claimed

3

the professor would climb up the Bell Tower on the campus of Northwest Missouri State University, and begin shooting the students. According to [the reporter], the post indicated the professor would commit this act sometime by the end of the present semester. Chief Green asked [the reporter] for the identity of the person that made the social media post, and also requested a copy of the print out of the post, but both were refused by [the reporter]. Chief Green obtained a search warrant and executed the search warrant on September 4, 2013.

Upon the examination of the search warrant I obtained a screen shot of a threatening post from Facebook from the account of Matt Rouch. Matt Rouch is a professor at Northwest Missouri State University. The Facebook post was as follows:

"But, yes, that's the beginning of the semester. I'm always optimistic. By October, I'll be wanting to get up to the top of the bell tower with a high powered rifle – with a good scope, and probably a gatling gun as well."

Chief Green then interviewed Matt Rouch who admitted he authored the post and claimed it was meant in jest. Rouch claimed he only has a pellet gun at his residence. Rouch admitted he deleted the post referenced above.

On September 5, 2013, witnessed [sic] notified Chief Green that Matt Rouch claimed he had a bomb in a brief case, or other bag, he walked into a building with on the campus of Northwest Missouri State University. Chief Green then detained Matt Rouch pending an investigatory 24-hour hold in the afternoon of September 5, 2013.

Chief Green requests permission to search the residence for firearms capable of lethal use as noted above in this affidavit to investigate whether sufficient evidence exists to proceed with criminal charges.

After reviewing the complaint and affidavit, an associate circuit judge issued a warrant for the search of Rouch's house for "a rifle with a scope, a gatling gun, or other firearms capable of lethal use."

Upon executing the search warrant, in an upstairs room of Rouch's home, officer's found in plain view marijuana, cultivated marijuana plants, planting materials, and drug paraphernalia. These items were seized by the police. No firearms capable

4

of lethal use were found in the home.[2]  Rouch was subsequently charged by information with one class B felony count of Producing a Controlled Substance (Marijuana), § 195.211, and one class C felony count of  Possession of a Controlled Substance (Marijuana), § 195.202.

Rouch eventually filed a motion to quash the warrant to search his home and to suppress the evidence seized as a result of that search.[3]  Rouch asserted that the warrant complaint and affidavit did not show that the firearms the State sought to search for and seize were either contraband or evidence of a crime.  He further asserted that the State had failed to establish probable cause to believe that any such firearms would be found in his home.

Following an evidentiary hearing, the circuit court entered its order concluding that the warrant to search Rouch's home "should be quashed and all evidence discovered from that search should be suppressed because there was no probable cause to believe that criminal contraband or evidence of a criminal offense would be discovered."  The court further found that Chief Green had misled the court by omitting significant information from his affidavit regarding the context of the comments and evidence indicative of Rouch's comments being intended to be humorous.  The State brings two points on interlocutory appeal from the circuit court's ruling.[4]

In its first point, the State contends that the trial court erred in finding that no probable cause existed to support the issuance of the search warrant.  The State asserts that:

---

[2] The pellet gun that Rouch had admitted to owning was found during the search.
[3] Rouch also sought to quash the warrant to search the newspaper offices but the trial court did not quash that warrant and that ruling is not before this court on appeal.
[4] Interlocutory appeal of the trial court's ruling on the motion to suppress is authorized by § 547.200.1(3).

probable cause existed to search Respondent's residence after he made repeated threatening statements involving both shooting weapons from a campus monument and possessing a bomb while in a campus building after admonishment that such statements were taken seriously and a search of the campus premises did not reveal weapons or bombs and Respondent admitted to possessing a "pellet gun" at his residence, in that based on the totality of the circumstances there was a fair probability that evidence of a crime was held or located at Respondent's residence.

This point is wholly without merit.

"The Fourth Amendment to the United States Constitution guarantees that no warrant shall issue except upon probable cause supported by oath or affirmation." ***State v. Wilbers***, 347 S.W.3d 552, 556 (Mo. App. W.D. 2011) (internal quotation omitted). "Probable cause to search exists when, at the time the magistrate [or judge] issues the warrant, there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of crime[5] and will be present at the time and place of the search." ***Id***. at 558 (internal quotation and emphasis omitted). "In determining whether probable cause exists, the issuing magistrate or judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him or her[,] there is a fair probability that contraband or evidence of a crime will be found in a particular place." ***Id***. at 557 (internal quotation omitted). "[P]robable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction.'" ***State v. Mitchell***, 20 S.W.3d 546, 556 (Mo. App. W.D. 2000) (quoting ***State v. Lee***, 617 S.W.2d 398, 400-01 (Mo. banc 1981)).

---

[5] In relevant part, § 542.271 provides that a search warrant may be issued for any "[p]roperty, article, material, or substance that constitutes evidence of the commission of a criminal offense" or "[p]roperty for which possession is an offense under the law of this state."

6

"[I]n reviewing a trial court's ruling on a motion to suppress evidence seized pursuant to a search warrant, the court gives great deference to the initial judicial determination of probable cause that was made at the time the warrant issued." *State v. Neher*, 213 S.W.3d 44, 49 (Mo. banc 2007). "The duty of a reviewing court is simply to ensure that the issuing judge had a substantial basis for determining that probable cause for the search did exist." *Id.* "In conducting the review of whether probable cause exists, the appellate court may not look beyond the four corners of the warrant application and the supporting affidavits." *Id.* "The court will only reverse if the issuing magistrate or judge clearly erred in initially determining, based on the totality of the circumstances, that probable cause existed." *Id.*

"Deference to the issuing court is not, however, without limit." *Wilbers*, 347 S.W.3d at 557. "Reviewing courts will not defer to a warrant based on an affidavit that does not provide the [issuing court] with a substantial basis for determining the existence of probable cause." *Id.* at 558 (internal quotation omitted).

The warrant complaint and supporting affidavit sought to search Rouch's house for "a rifle with a scope, a gatling gun, or other firearms capable of lethal use" and the warrant was issued to search for those items.[6] Neither the warrant complaint nor Chief Green's affidavit indicate that it would be illegal for Rouch to have such items in his possession or that such items were otherwise contraband. Further, neither the complaint nor affidavit state, nor does common sense indicate, what criminal offense or offenses Rouch's possession of a firearm would serve as evidence of him committing.

---

[6] The State inexplicably maintained at the suppression hearing, and continues to maintain on appeal, that the warrant complaint and affidavit sought to search Rouch's home for bombs and explosives. Chief Green expressly testified at the motion hearing that he had not applied to search for bombs or explosive devices and the clear language of the warrant complaint and Chief Green's affidavit reflects that a warrant was only sought to search for "a rifle with a scope, a gatling gun, or other firearms capable of lethal use."

7

The State argues that any firearms recovered from the home would have been evidence that Rouch committed the crime of making a terroristic threat under § 574.115, making a false bomb report in violation of § 575.090, harassment by using an electronic communication to frighten another in violation of § 565.090, or assault in violation of § 565.050, 565.060, and 565.090. The State baldly maintains that Rouch's possession of a firearm in his house would have been evidence that he intended for people to feel threatened by his Facebook post and verbal statement about a bomb and thereby aided in proving the intent element of those offenses.

Contrary to the State's assertions, however, based upon the totality of the circumstances, Rouch's possession of a firearm inside his home simply would not have served as evidence that he intended for either of his comments to be taken seriously rather than in jest. As the warrant complaint and affidavit do not reflect that the items to be searched for and seized were contraband or evidence of a crime, the trial court did not err in quashing the warrant.[7] Point denied.

In its second point, the State contends that, even if the search warrant was improperly issued and properly quashed by the trial court, the evidence still should not have been suppressed based upon the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The State argues that Chief Green and the other law enforcement officers involved in the search acted in good faith reliance upon a warrant issued by a judge and that the evidence should, therefore, not have been excluded.

---

[7] Having reached this conclusion, we need not determine whether the affidavit sufficiently demonstrated that there was fair probability that "a rifle with a scope, a gatling gun, or other firearms capable of lethal use" would be found in Rouch's home, though that proposition would seem rather dubious.

8

"It is well settled that under the 'exclusionary rule,' the fruits of an unlawful search or seizure are inadmissible and cannot be used against a defendant at trial." **State v. Clampitt**, 364 S.W.3d 605, 613 (Mo. App. W.D. 2012) (internal quotation omitted). However, in *Leon*, the Supreme Court "held that in some instances, when law enforcement officers act in the good-faith belief that a search is legal, even if that search is ultimately determined to be unlawful, the evidence is admissible because to exclude it would have no deterrent effect on future law enforcement conduct." **State v. Ellis**, 355 S.W.3d 522, 524 (Mo. App. E.D. 2011). Accordingly, *Leon* held that "[w]hen police act in reasonable reliance on a facially valid search warrant issued by a detached and neutral magistrate, the exclusionary rule will not operate to bar evidence obtained under the search warrant, even though the warrant may be invalid." **State v. Buchli**, 152 S.W.3d 289, 305-06 (Mo. App. W.D. 2004) (citing **United States v. Leon**, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). *Leon* further provided, however, that this good-faith exception does not apply and suppression remains appropriate:

> 1) if the affiant provides information he knows or should know is false;[8]
> 2) the magistrate [or judge] wholly abandons his judicial role;
> 3) if the affidavit is so lacking in probable cause as to render official belief in its existence entirely unreasonable; or
> 4) if the warrant is so facially deficient the executing officers cannot reasonably presume it to be valid.

**Wilbers**, 347 S.W.3d at 562 (internal quotation omitted).

The trial court found that the *Leon* good faith exception to the exclusionary rule did not apply because the warrant and affidavit are so lacking in indicia of probable cause to believe that contraband or evidence of a crime would be found in the home

---

[8] The good-faith exception does not apply and suppression "remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." **United States v. Leon**, 468 U.S. 897, 923, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677 (1984).

9

that official belief in its existence was entirely unreasonable. The court also found that Chief Green had misled the issuing judge by omitting from his affidavit the context of Rouch's statements, that the witnesses had all stated that they believed the comments to have been made in jest, and that Chief Green personally believed the comments to have been meant as jokes.

As noted *supra*, it is readily apparent on the face of the warrant and affidavit that the items subject to the warrant were not contraband or evidence of a crime. The clear reason for which the warrant was sought was to assess Rouch's capability to commit a violent crime in the future. Indeed, Chief Green acknowledged as much at the hearing.[9] The trial court did not err in finding that the warrant was so lacking in indicia of probable cause as to render the officers' belief in its existence entirely unreasonable and that the good faith exception to the exclusionary rule, therefore, did not apply.[10] Point denied.

The trial court's ruling is affirmed.

_____
Joseph M. Ellis, Judge

All concur.

---

[9] Chief Green testified about his department's threat assessment procedures and stated that, even though he personally thought the statements were likely meant as jokes, he could not take the chance of being wrong and that it was better to be safe than sorry and to assess whether Rouch posed a threat.

[10] Having reached this conclusion, we need not address whether Chief Green's omission of context and witness statements from the affidavit constituted a *Franks* violation that would negate the good faith exception to the exclusionary rule.