**STATE of Missouri, Appellant,**

v.

**Leslie Michelle BRYAN, Respondent.**

**WD 80591**

Missouri Court of Appeals, Western District.

Opinion filed: September 19, 2017

Aaron Maness, for Appellant.

Randall O. Barnes, for Respondent.

Before Division Four: Mark D. Pfeiffer, Presiding Judge, Victor C. Howard, Judge and Alok Ahuja, Judge

## VICTOR C. HOWARD, JUDGE

The State of Missouri appeals the order of the Cole County Circuit Court granting Leslie Bryan's motion to suppress evidence. It claims on appeal that the trial court erred because the affidavit supporting the search warrant was sufficient to establish probable cause. The suppression order is reversed, and the case is remanded for further proceedings.

### Facts

On April 4, 2016, a prosecutor in Cole County sought and obtained a search warrant. The search warrant application sought to search an upstairs bedroom at a specified address. It stated: "The bedroom is on the right side of the hallway. The

bedroom belongs to Leslie Bryan (dob 09/03/1974) and Kelly Charlton (dob 05/16/1968)." The application asserted that the following evidence was believed to be present: "Heroin, oxycontin and other controlled substances, and all items associated with the possession and use of controlled substances, including but not limited to drug paraphernalia."

Attached to the application was the affidavit of Officer Ross Hartley. The affidavit asserted that Officer Hartley had been a police officer with the Jefferson City Police Department for 11 years. He was investigating a controlled substance violation at the address specified in the warrant application. The affidavit further stated:

3. The witness, Camryn Charlton, a resident of the condominium found narcotics inside the residence. She lives in the residence with her father and his live-in girlfriend, Leslie Bryan (dob 09/03/1974). The witness stated on April 3, 2016, while looking for a lost item, she found a black pouch underneath the bed in her father's and Bryan's bedroom. The witness stated that the pouch contained needles, baggies containing a white-powder substance, a spoon, and a rubber tourniquette [sic]. The witness left the pouch under the bed.

4. Today, the witness went back into her father's bedroom and noted that the pouch was gone, but a black briefcase was in the room. Her search of the briefcase found needles, a spoon, plastic pouches, rolling papers, bloody paper-towel and an 80-count sheet of oxycontin with a sticker from St. Elizabeth Care Center, at that time, there were 5 pills left. The sticker stated the pills belonged to Michael W. Wray. Leslie Bryan is an employee of St. Elizabeth Care Center.

5. Charlton contacted law-enforcement. She gave permission to search the residence. Charlton's father is currently in rehab and could not be contacted for permission to search his and Bryan's bedroom.

Officer Hartley searched the specified bedroom on April 4, 2016, and found the following: "Black briefcase containing 12 syringes, spoon, rolling papers, elastic strap, sterile pad, 6 oxycontin pills, medical chart, 43 plastic pouches."

Bryan was charged with possession of a controlled substance, section 195.202,[1] and possession of drug paraphernalia, section 195.233. Bryan filed a motion to suppress. At the hearing on the motion, the State proffered evidence in the form of the testimony of Jefferson City Missouri Police Officer Ross Hartley and the affidavit in support of the warrant at issue. The court granted Bryan's motion to suppress. This interlocutory appeal by the State followed.

### Analysis

"The Fourth Amendment to the United States Constitution guarantees that no warrant shall issue except upon probable cause supported by oath or affirmation." *State v. Rouch*, 457 S.W.3d 815, 819 (Mo. App. W.D. 2014) (internal quotation omitted). There is probable cause to search when, at the time the judge issues the search warrant, "there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of crime and will be present at the time and place of the search." *Id.* (internal quotation omitted). "In determining whether probable cause exists, the issuing ... judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit

---

1. Statutory references are to RSMo Cum. Supp. 2013.

before him or her[,] there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 819-20 (internal quotation omitted). "[P]robable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction." *Id.* at 820 (internal quotation omitted).

"[I]n reviewing a trial court's ruling on a motion to suppress evidence seized pursuant to a search warrant, the court gives great deference to the initial judicial determination of probable cause that was made at the time the warrant issued." *State v. Neher*, 213 S.W.3d 44, 49 (Mo. banc 2007). "The duty of a reviewing court is simply to ensure that the issuing judge had a substantial basis for determining that probable cause for the search did exist." *Id.* "The court will only reverse if the issuing magistrate or judge clearly erred in initially determining, based on the totality of the circumstances, that probable cause existed." *Id.*

"Deference to the issuing court is not, however, without limit." *State v. Wilbers*, 347 S.W.3d 552, 557 (Mo. App. W.D. 2011). "Reviewing courts will not defer to a warrant based on an affidavit that does not provide the [issuing court] with a substantial basis for determining the existence of probable cause." *Id.* at 558 (internal quotation omitted). "Despite the deference we afford to an issuing judge's decision to issue a search warrant, '[t]he ultimate issue of whether the Fourth Amendment was violated is a question of law ... which this court reviews *de novo.*'" *State v. Fowler*, 467 S.W.3d 352, 356 (Mo. App. W.D. 2015) (quoting *State v. Ramires*, 152 S.W.3d 385, 391 (Mo. App. W.D. 2004)).

"An informant's veracity, reliability and basis of knowledge, while relevant to determining probable cause, are not separate and independent requirements to be rigidly exacted in every case...." *State v. Ford*, 21 S.W.3d 31, 34 (Mo. App. E.D. 2000) (internal quotation omitted). "They should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause.'" *Id.* at 34-35 (internal quotation omitted). "Under the totality of the circumstances test, a deficiency in one area can be compensated for by a strong showing of another or by some other indicia of reliability." *Id.* at 34 (internal quotation omitted). "Common sense is a key ingredient in considering the absence or presence of probable cause." *Id.*

Officer Hartley's affidavit was based on hearsay: what Charlton told him. "An affidavit that relies on hearsay is sufficient to support a finding of probable cause if there is a substantial basis for crediting the hearsay." *State v. Baker*, 103 S.W.3d 711, 720 (Mo. banc 2003). "When evaluating the creditability of hearsay reports contained in a supporting affidavit, the issuing judge must consider the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, whether the hearsay reports were based on personal knowledge and whether the reports have been corroborated." *Id.* (internal quotation omitted).

"Some hearsay reports, by virtue of the identity of the declarant and the very nature of the circumstances under which the incriminating information became known, are viewed as inherently trustworthy." *Id.* (internal quotations omitted). "For example, [w]hen the information upon which the warrant is based comes from one who claims to have witnessed a crime ... the information carries with it indicia of reliability and is generally presumed to be reliable." *Id.* (internal quotation omitted). "Furthermore, hearsay in-

formation in a search warrant affidavit from an ordinary citizen is considered more deserving of a presumption of reliability than [information provided by] informants from 'the criminal milieu.' " *Id.* (internal quotation omitted).

■■■ Charlton was a private citizen reporting what she observed. She reported the contraband with specificity. "Where an informant's information is detailed, it bears the unmistakable marks of firsthand observation." *Fowler*, 467 S.W.3d at 358 (internal quotation omitted). "The freshness of the information is also significant." *State v. Henry*, 292 S.W.3d 358, 367 (Mo. App. W.D. 2009). Charlton's observations occurred the day before and the day of the application for the search warrant.

In *State v. Hill*, 929 S.W.2d 258 (Mo. App. E.D. 1996), a police officer's affidavit in support of a search warrant application stated in part:

1. That [I] was contacted on the 27th day of October, 1992 by a concerned citizen.

2. That this concerned citizen advised [me] on October 27, 1992 that within the past few days this concerned citizen smelled the odor of marijuana inside [defendant's residence]. The concerned citizen further stated to me that a quantity of marijuana and drug paraphernalia had been seen in the residence in the past. The concerned citizen further stated that said concerned citizen is familiar with both the appearance of marijuana and with the smell of burning marijuana.

3. [I] discussed the location of [defendant's residence] with the concerned citizen and the location the concerned citizen related to me was the same location of the residence which [I] know to be the residence of [defendant].

*Id.* at 263. In finding that the affidavit stated sufficient probable cause, the court stated:

We find these facts remarkably similar to the facts in *State v. Berry*, 801 S.W.2d 64 (Mo. banc 1990) and *U.S. v. Jackson*, 898 F.2d 79 (8th Cir. 1990). In both of those cases, a person who wished to remain anonymous informed the police that he had personally seen a quantity of marijuana at the residence of a named individual. The anonymous informant claimed that either he was familiar with the appearance of marijuana or his daughter, who was present at the time the marijuana was observed, was familiar with the appearance of marijuana. The police then verified the only information capable of being confirmed—that the alleged marijuana possessor lived at the location specified by the informant. From those facts, the reviewing court held that the affidavit stated sufficient probable cause to support the issuance of a search warrant.

*Id.* (citing *Berry*, 801 S.W.2d at 64; *Jackson*, 898 F.2d at 81). The affidavit in Bryan's case is similar to *Hill*, *Berry*, and *Jackson*.

■■■ "In dealing with probable cause we deal with *probabilities,* not certainties." *Henry*, 292 S.W.3d at 364. "These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* (internal quotation omitted). "Search warrants, therefore, should not be deemed invalid by interpreting affidavits in a hyper technical rather than common sense manner." *Id.* (internal quotation omitted). "The preference for warrants that requires us to give deference to the issuing judge's determination of probable cause also requires some latitude in interpretation of the supporting affidavit." *Id.* "Even when the sufficiency

of an affidavit is marginal, our determination should be informed by the preference accorded to warrants." *Id.* (internal quotation omitted). The issuing judge had a substantial basis for concluding that there was a fair probability that contraband and evidence of criminal activity would be found at Bryan's residence.

In its Findings of Fact and Conclusions of Law, the motion court took issue with Officer Hartley's testimony. It stated:

> This court is guided by many appellate decision[s] instructing tribunals to not construe the probable cause used to issue a warrant in a hyper-technical manner. Those same decisions also however, decree using a common-sense manner. Here a common-sense manner dictates that affidavits in support of the issuance of a warrant must contain statements which do not misdirect the court as to the efforts made to contact the owners of the property before the issuance of the warrant nor should the affidavit contain statements alleging consent when that consent was not obtained nor could it have been properly given. In addition, while the statements of a concerned citizen can be presumed to be reliable, there must also be a consideration of the context and reasonableness of those statements.

The motion court concluded that "the search warrant was issued without probable cause."

Officer Hartley was the only witness at the motion hearing. In his testimony, Officer Hartley stated the following: Officer Hartley believed Charlton was 18 years old but he did not verify her identity or age. Charlton told Officer Hartley that she was looking for body wash when she looked inside the black pouch underneath her father and Bryan's bed. Officer Hartley admitted that he did not believe a reasonable person would search for body

wash in a closed pouch under a bed or in a closet. Charlton said she thought Bryan was a heroin addict but could not offer specifics as to her belief other than she saw Bryan fall asleep at the kitchen table the week before. Officer Hartley knew that Charlton was not the owner or renter of the premises. Officer Hartley also knew where Bryan and Charlton's father were and did not attempt to contact either person.

"Generally, the appellate court may not look beyond the four corners of the warrant application and the supporting affidavits." *State v. Mitchell*, 480 S.W.3d 410, 415 (Mo. App. W.D. 2015) (internal quotation omitted). However, the motion court found that Officer Hartley "misdirected" the court about trying to obtain consent to search. The court noted that there was no evidence that Charlton was old enough to consent or had joint access or control with respect to the bedroom or closet. The court also noted that Officer Hartley did not seek consent from either Bryan or Charlton's Father. Beyond consent, the motion court found that Officer Hartley should not have found Charlton's story about looking for body wash to be believable.

"[W]hen, as in this case, it is alleged that the supporting affidavit includes deliberately false information or is made with reckless disregard for the truth, matters outside of the four corners of the affidavit must be considered." *Id.* "As always, deference is given to the trial court's credibility determinations." *Id.*

To successfully attack a search warrant on the basis of a misrepresentation under the test established by the United States Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978), a defendant must make a substantial

showing that the affiant knowingly, intentionally, or with reckless disregard for the truth, included a false statement in the affidavit and that without that false statement the remaining information does not establish probable cause.

*State v. Dawson*, 985 S.W.2d 941, 950 (Mo. App. W.D. 1999) (internal quotation omitted). "This *Franks* test for a misrepresentation in an affidavit also applies to the omission of statements from an affidavit." *Id.*

Therefore, when a defendant alleges a search warrant is invalid because of omitted facts, the challenge must show that (1) the facts were omitted with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading and (2) if the affidavit were supplemented with the omitted facts, the affidavit would not have been sufficient to establish probable cause.

*Id.*

The motion court found that Officer Hartley misdirected the issuing judge with respect to the consent obtained from Charlton and the efforts to obtain consent from Bryan and Charlton's father. An application for a search warrant presupposes that consent has not been given. Even if all mention of consent were omitted from Officer Hartley's affidavit, there would still be probable cause under the *Franks* test.[2]

The motion court also found that Officer Hartley should not have believed Charlton's story about looking for body wash when she found the contraband. Officer Hartley testified that Charlton was looking for body wash and other missing items when she saw the black pouch and looked inside. There was no evidence to suggest that Charlton looked in the bedroom or the pouch at the direction of law enforcement. To the contrary, she only contacted law enforcement after finding the contraband on her own.

Bryan implies on appeal that Charlton was looking in the bedroom with the motive of getting Bryan into trouble. The trial court seems to have agreed with its finding that Charlton's story about looking for body wash was not believable. There is no requirement that a person who reports the presence of contraband do so with pure motives. To the contrary, most informants likely report the presence of contraband with the intention of the police arresting the possessor of the contraband.[3]

Under the *Franks* test, this court must determine whether Officer Hartley's affidavit, without any mention of consent and with the additional detail that Charlton said she was looking for body wash when she found the contraband, would have been sufficient to establish probable cause. *Id.* Charlton was a private citizen reporting contraband she saw that day and the day

---

2. To the extent that the issuing judge feels that this officer misdirected or mislead the court in the application for the warrant, nothing prohibits the judge from considering this malfeasance when this officer requests any search warrant in the future.

3. Whether Charlton's actions in her original search where she discovered the illegal items were reasonable or unreasonable, or born of hostility towards Bryan, is irrelevant to the validity of the search warrant, since "'the protection of the [F]ourth [A]mendment against unreasonable search and seizure does

not apply to actions of private individuals not acting pursuant to a request by the police[,]' no matter how unreasonable the search." *State v. Marshall*, 410 S.W.3d 663, 674 (Mo. App. S.D. 2013) (quoting *State v. Brasel*, 538 S.W.2d 325, 330 (Mo. banc 1976)); *see also State v. Charlton*, 114 S.W.3d 378, 383 (Mo. App. S.D. 2003) ("The law is well settled that the Fourth Amendment is inapplicable to searches or seizures effectuated by private citizens not acting at the behest of a government entity.").

prior. In addition to being fresh, her description of the contraband was quite detailed. The amended affidavit is in line with the affidavits in *Hill*, *Berry*, and *Jackson* as discussed *supra*. It is sufficient to establish probable cause.

The point is granted.

## Conclusion

The order granting Bryan's motion to suppress is reversed. The case is remanded to the trial court for further proceedings.

All concur.

