

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | WD87670 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | May 27, 2025 |
| ISRAEL BARRERA, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Cass County, Missouri**
**The Honorable Stacey J. Lett, Judge**

**Before Division One:** Karen King Mitchell, Presiding Judge, and
Lisa White Hardwick and Mark D. Pfeiffer, Judges

The State of Missouri, in its criminal prosecutorial capacity, appeals the ruling of

the Circuit Court of Cass County, Missouri ("motion court"), which granted Mr. Israel

Barrera's ("Barrera") motion to suppress the test results of a urine sample seized and

tested pursuant to two separate warrants. We affirm.

## Facts and Procedural History

On July 12, 2021, the Cass County Sheriff's Office received a tip, which alleged

that Barrera had molested his fourteen-year-old stepdaughter ("Victim").[1]  Following the

---

[1] Pursuant to the directive of section 509.520.1(4)-(5), (7) (Supp. IV 2024), we do
not use the names of any victims, witnesses, or minors in this opinion, other than parties

initial report, a medical examination at Children's Mercy Hospital confirmed that Victim had contracted trichomoniasis, a sexually transmitted disease ("STD"), and in a forensic interview, Victim disclosed that Barrera had molested her several times over many years.

On September 1, 2021, Barrera was taken into the custody of the Sheriff and held in the Cass County Jail. Later that same day, pursuant to a warrant, officers seized a urine sample and buccal swab sample from him. However, the urine sample was found to be improperly preserved and unusable for testing on September 13, 2021.

On September 14, 2021, two months after the report of sexual abuse to law enforcement, Detective M.B. ("Detective") applied for two separate warrants simultaneously.

For the first warrant, Detective requested to seize a "[u]rine sample from Israel Barrera." Detective included the following sworn statement to support his basis for probable cause:

> Affiant and Applicant being duly sworn deposes and states that he [is] a graduate of the Central Missouri State University with a Bachelor of Science degree in Criminal Justice Administration, Graduate of MO Sheriff's Association Law Enforcement Academy with over 15 years' experience and training in criminal investigations has probable cause to believe that the above listed property to be searched for and seized . . . based upon the following facts, to-wit:
>
> On July 12, 2021, it was reported to the Cass County Sheriff's Office, a fourteen year old girl, [Victim] had been sexually molested by her step father, Mr. Israel Barrera. An examination by Children's Mercy Hospital determined [Victim] had contracted a sexually transmitted disease Trichomonas [sic]. [Victim] denied having any consensual partners to the medical staff conducting the examination.

---

to the underlying litigation. All other statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through November 27, 2024, unless otherwise indicated.

For the second warrant, Detective submitted the following request:

> I, [Detective] . . . make[ ] this Affidavit and Application in support of the issurance of a Search Warrant, to search the following described person, place, or thing:
>
>> A urine sample recovered on September 14, 2021, from the body of Israel (NMI) Barrera . . . .
>
> [A]nd to there search for . . . the following property or things:
>
>> Complete testing and analysis . . . of the urine sample for sexually transmitted diseases, specifically Trichonomas [sic]. All results from said testing and analysis.

To support the second warrant application, Detective submitted the following affidavit:

> Affiant . . . states that he has Probable Cause . . . based upon the following facts, to wit:
>
> On July 12, 2021, it was reported to the Cass County Sheriff's Office, a fourteen year old girl, [Victim] had been sexually molested by her step father, Mr. Israel Barrera. An examination by Children's Mercy Hospital determined [Victim] had contracted a sexually transmitted disease Trichonomas [sic]. [Victim] denied having any consensual partners to the medical staff conducting the examination.
>
> A search warrant was obtained and *a urine sample was obtained from Mr. Israel Barrera on September 14, 2021*.

(Emphasis added.) At the time Detective submitted the two affidavits, *no urine sample had been obtained on September 14, 2021*. Both warrants were issued by the same issuing judge, and a urine sample was seized and tested the same day.

During the subsequent criminal prosecution, Barrera filed a motion to suppress the urine test results. At a hearing on the motion, Detective acknowledged that his statement, "[a] search warrant was obtained and a urine sample was obtained from Mr. Israel

3

Barrera on September 14, 2021," was not true at the time of his request and that he was aware it was not true.

Reviewing the affidavits, the motion court found that the affidavits failed to establish probable cause to justify seizing and testing the urine sample. The motion court then considered the State's argument that the test results should not be suppressed even if the affidavits were insufficient because Detective obtained and had the urine sample tested in good-faith reliance on the judicially issued warrants. The motion court concluded that Detective's reliance was not in good faith because the affidavits were so lacking in indicia of probable cause that a well-trained officer would not reasonably rely on warrants issued based on the warrant-application affidavits and made particular note of the fact that Detective had provided false information to the issuing judge in his warrant-application affidavits.

Thus, the motion court granted the motion to suppress. The State timely filed an interlocutory appeal pursuant to section 547.200.1, raising two points on appeal, challenging the motion court's findings relating to (1) probable cause and (2) the good-faith exception.

**Point I**

The standard of review for an interlocutory appeal of a motion to suppress depends on whether the challenged search or seizure was preceded by a warrant. *State v. Brown*, 382 S.W.3d 147, 156 (Mo. App. W.D. 2012) ("Here, there were seizures conducted without a warrant as well as some pursuant to warrants. . . . [T]hese two scenarios involve two different standards of review . . . .") (emphasis omitted)). If no

preceding warrant issued, we review the *motion court's* decision for clear error and defer to its findings of fact. *Id.* (citing *State v. Mosby*, 94 S.W.3d 410, 414-15 (Mo. App. W.D. 2003)). Otherwise, we review the decision of the *issuing judge—not the motion court—* for clear error based on the four corners of the warrant application and supporting affidavits. *Id.* (citing *State v. Neher*, 213 S.W.3d 44, 49 (Mo. banc 2007)).

Because the challenged seizure and search of Barrera's urine sample was preceded by a warrant in this case, we review the issuing judge's determination of probable cause in the deferential manner outlined in *Neher*:

> [I]n reviewing a trial court's ruling on a motion to suppress evidence seized pursuant to a search warrant, the court gives great deference to the initial judicial determination of probable cause that was made at the time the warrant issued. [*State v. Berry*, 801 S.W.2d 64, 66 (Mo. banc 1990)]. Because there is a strong preference in the Fourth Amendment for searches to be conducted pursuant to a warrant, a reviewing court should not quash a warrant by construing it in a hypertechnical, rather than a commonsense, manner. [*Illinois v. Gates*, 462 U.S. 213, 235-36 (1983)]. The duty of a reviewing court is simply to ensure that the issuing judge had a substantial basis for determining that probable cause for the search did exist. *Id.* at 238.

213 S.W.3d at 49.

"[N]o warrant to search any place, or seize any person or thing . . . shall issue . . . without probable cause, supported by written oath or affirmation." MO. CONST. art. 1, § 15; *accord* U.S. CONST. amend. IV ("[N]o Warrants shall issue, but upon probable cause . . . ."). "In determining whether probable cause exists, the issuing magistrate or judge must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her] . . . there is a fair probability

that contraband or *evidence of a crime will be found* in a particular place.'" *Neher*, 213 S.W.3d at 49 (alteration in original) (emphasis added) (quoting *Gates*, 462 U.S. at 238).

When evaluating whether the affidavit supplies enough information to support a basis for finding of probable cause, the reviewing court must remember that "[t]he affidavit in support of a search warrant should be weighed as understood by those versed in law enforcement and not in terms of library analysis by scholars." *State v. Wilbers*, 347 S.W.3d 552, 557 (Mo. App. W.D. 2011) (citing *State v. Henry*, 292 S.W.3d 358, 364 (Mo. App. W.D. 2009)). "[A]ffidavits are normally drafted by non-lawyers in the midst and haste of a criminal investigation." *Id.* (alteration in original) (citing *Gates*, 462 U.S. at 235). Despite this important admonition:

> Deference to the issuing court is not, however, without limit. Reviewing courts *will not defer* to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause. A common-sense reading *does not allow a judge to read things into the affidavit that simply are not there*.

*Id.* at 557-58 (citations and quotation marks omitted) (emphasis added). "Common sense is a key ingredient in considering the absence or presence of probable cause." *State v. Bryan*, 529 S.W.3d 334, 339 (Mo. App. W.D. 2017) (quoting *State v. Ford*, 21 S.W.3d 31, 34 (Mo. App. E.D. 2000)).

Here, the entirety of the support for a finding of probable cause, as presented to the issuing judge, consists of three sentences and a conclusory assertion from Detective that he believes from his training and fifteen years' experience as a law enforcement officer that he possessed probable cause—without any specific explanation of how his training and experience led him to this conclusion.

6

Of these statements, the only allegation of criminal conduct—a necessary component to establish probable cause—is a statement from an unidentified party that alleges Barrera sexually molested Victim: "it was reported to the Cass County Sheriff's Office, a fourteen year old girl, [Victim] had been sexually molested by her step father, Mr. Israel Barrera."

"Here, the affidavit in question was not signed by the informant, so the statement attributed to the informant is itself hearsay." *State v. Cornelius*, 1 S.W.3d 603, 606 (Mo. App. S.D. 1999).

> An affidavit of a police officer relying on a statement made by someone else may be sufficient to support a finding of probable cause if there is a "substantial basis" for crediting the statement of the informant. This will often require some indication that the informant learned the information through personal observation. It is also important to know whether the informant's statements were corroborated through other sources or whether there is some other reason to believe that the informant can reasonably be relied upon.

*Henry*, 292 S.W.3d at 365 (citations omitted); *accord State v. Dowell*, 25 S.W.3d 594, 607 (Mo. App. W.D. 2000) ("[A]n affidavit which relies on hearsay is sufficient *as long as there is a substantial basis for crediting the hearsay*. Hearsay in an affidavit may be found reliable when it is based on personal observation and it is corroborated." (alteration in original) (emphasis added) (quoting *State v. Dawson*, 985 S.W.2d 941, 949-50 (Mo. App. W.D. 1999))).

> Some hearsay reports, by virtue of the identity of the declarant and the very nature of the circumstances under which the incriminating information became known, are viewed as inherently trustworthy. For example, [w]hen the information upon which the warrant is based comes from one who claims to have witnessed a crime . . . the information carries with it indicia of reliability and is generally presumed to be reliable. Furthermore, hearsay information in a search warrant affidavit from an

ordinary citizen is considered more deserving of a presumption of reliability than [information provided by] informants from the criminal milieu.

*Bryan*, 529 S.W.3d at 339-40 (alteration in original) (citations and quotation marks omitted) (quoting *State v. Baker*, 103 S.W.3d 711, 720 (Mo. banc 2003)). "Moreover, while it is not necessary to establish the past reliability of the informant, 'factual statements of past reliability are a sufficient basis for the magistrate to gauge independently the reliability of an informer.'" *State v. Robinson*, 454 S.W.3d 428, 439 (Mo. App. W.D. 2015) (quoting *State v. Laws*, 801 S.W.2d 68, 69-70 (Mo. banc 1990)).

Here, Detective's affidavit provides *no basis at all* for evaluating the reliability of the person who reported the allegation against Barrera. Among other things, it does not state whether the tip came from a jailhouse informant, a person offering the information as a concerned citizen, or a person closely related to either Barrera or Victim.[2] Nor does the affidavit state whether the tipster has previously provided accurate information to police. Additionally, the hearsay statement includes no information about the source of the tipster's allegation—including, but not limited to, whether the tipster witnessed the alleged crimes firsthand, heard Barrera confess to the crimes, observed Barrera acting suspiciously around Victim, merely had a suspicion of criminal wrongdoing, simply

---

[2] At the suppression hearing, Detective disclosed that Victim's mother reported the allegation and that this allegation was corroborated by Victim's own disclosures during a subsequent forensic interview at the hospital. This information obviously would have significantly bolstered the credibility of the hearsay statement in the warrant affidavit, but because Detective omitted this critical information from his warrant application and supporting affidavits, we cannot consider it in our review of the warrant-issuing judge's decision. "It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention." *United States v. Jacobsen*, 466 U.S. 109, 112 n.2 (1984) (citations omitted).

repeated a rumor from another person, or even whether the tipster had any basis to believe the tip at all. Because of the lack of information surrounding the identity and reliability of the tipster, we must treat the affidavit allegation against Barrera as an anonymous tip with no corroborating details.

"Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.'" *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (citations omitted). "[H]owever, there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" *Id.* (quoting *Alabama v. White*, 496 U.S. 325, 327 (1990)). Thus, an affidavit's reliance on an anonymous tipster's hearsay statements, even without any indicia of the tipster's reliability, is not necessarily fatal to a finding of probable cause:

> If the hearsay can be properly credited, there is no need to show the informant was reliable. The determination of whether the hearsay is creditable requires necessarily that the issuing magistrate determine the veracity and basis of knowledge of [the] persons supplying [the] hearsay information. The concepts of veracity, reliability, and basis of knowledge are relevant considerations but they are not entirely separate and independent requirements to be rigidly applied in every case.

*Dowell*, 25 S.W.3d at 607 (alteration in original) (emphasis added) (citations and quotation marks omitted).

Completely anonymous hearsay may be credited when the tip is sufficiently detailed in its allegations and those allegations are independently corroborated:

> In this case, . . . police received an anonymous phone call. The caller stated that she had personally observed marijuana in the defendant's

home the day before. She described the location, the containers used, quantity involved, and the defendant's handling of the marijuana. She explained that she knew what marijuana looked like. This detailed information bears the unmistakable marks of firsthand observation. . . . The informant also extensively described the exterior of the home, vehicle and yard. Upon receiving the information, [Deputy] testified that he drove to the location and verified the accuracy of the only information he was capable of confirming: the location, vehicle and exterior description. . . .

From these facts, set forth in [Deputy]'s affidavit, we conclude that a neutral and detached magistrate could have made a practical, common-sense decision that there existed a fair probability that marijuana would be found in defendants' home and that a search warrant should issue.

*Berry*, 801 S.W.2d at 67; *see also Dawson*, 985 S.W.2d at 950 ("Corroboration from other witnesses and from independent observations of police officers creates a substantial basis for crediting the hearsay statements in an affidavit."). However, when the tip cannot be corroborated due to its lack of detail and specificity, it does not supply probable cause, and the investigating officer must uncover further supporting evidence outside of the tip to establish probable cause:

The question presented in this case is whether the police did enough to corroborate the anonymous tip for it to exhibit sufficient reliability to provide reasonable suspicion to stop the appellant's vehicle. Appellant argues the tip leading to his stop and subsequent arrest came from an anonymous source and lacked the required indicia of reliability to provide reasonable suspicion for the search and seizure. Appellant relies on *Florida v. J.L.*, 529 U.S. 266, 120 S. Ct. 1375, 146 L.Ed.2d 254 (2000), in which the Supreme Court recently addressed the issue of anonymous tips. In that case, the Miami Dade police received an anonymous tip that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *Id.* at 268, 120 S. Ct. 1375. Two officers responded to the tip and found three black males standing at the bus stop. *Id.* One of the three, J.L., was wearing a plaid shirt. *Id.* The police had no reason, apart from the tip, to suspect any of the three of illegal conduct. *Id.* One of the police officers approached J.L., told him to put his hands up, frisked him, and seized a gun from him. *Id.*

The Supreme Court held that the anonymous tip, *without more, was not sufficient*[] to justify the police officer's stop and frisk of J.L. *Id.* at

10

271, 120 S. Ct. 1375. *The Court stated that the tip did not provide the required indicia of reliability because "the anonymous call concerning J.L. provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility."  Id.*

*State v. Berry*, 54 S.W.3d 668, 673 (Mo. App. E.D. 2001) (emphasis added).

In this case, the tip, as presented in the affidavits, is merely a conclusory assertion that Barrera previously molested Victim and includes no specific details of the alleged sexual misconduct that could be corroborated.  Thus, this anonymous tip is akin to the insufficient anonymous tip in *Florida v. J.L.* and unlike the anonymous tip deemed credible in *State v. Berry*.

Here, the affidavits offered just two additional sentences to support the anonymous tip—that Victim had contracted trichomoniasis, an STD, and that Victim, a minor, had claimed that she had not had any consensual sexual encounters.  However, the affidavits do not assert or explain that Victim's trichomoniasis diagnosis was indicative of the kind of sexual contact alleged in the anonymous tip.  And furthermore, because the affidavits fail to provide even a general timeline of Victim's positive test, the timing of the alleged sexual misconduct, or any details about the length of time that trichomoniasis will remain present in a human's body, the affidavit provides no reason to believe that the STD would still be present and detectable in Barrera's urine.

We do not ask law enforcement officers applying for warrants to become experts on STDs or to draft a medical treatise in their affidavits; but, they must provide *some* source or explanation for their belief that the STD they plan to test for will be present in the seized and tested urine sample and that the presence of that specific STD in the victim corroborates the alleged wrongdoing being investigated—whether that source is their

11

training, their years of experience in similar cases, the opinions of other officers with such experience, the opinion of a medical professional with training on the issue, or through personal research.

Here, the Detective's affidavits offered *no explanation whatsoever* for his belief that Victim's trichomoniasis diagnosis corroborates the sexual molestation alleged in the anonymous tip; instead, Detective provided a bare conclusory assertion that he possessed probable cause, and he bolstered his affidavit by providing false information to the warrant-issuing judge. This conclusory assertion is insufficient: "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; [the magistrate's] action cannot be a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239.

Undeterred, the State asserts that "common sense" allows us to conclude that the mere presence of *any* STD in a minor corroborates an anonymous allegation that the minor was "sexually molested." However, this connection is not simply a matter of commonsense inference; instead, the State is requesting us to read in a justification of probable cause that is not within the four corners of the warrant application. Ultimately, the warrant-issuing judge had no basis for evaluating whether the source of the information supporting the apparent connection that Detective made between Victim's diagnosis and the anonymous tip was reasonable or reliable.[3]

---

[3] We note once again that had Detective mentioned that Victim's disclosures during the forensic interview and mother's allegation of abuse corroborated the conclusory hearsay allegation in the affidavits, our ruling today may be different. But because that fact was not included for the warrant-issuing judge's consideration, we may

Because the affidavit relies almost entirely on an uncorroborated anonymous tip and includes no information regarding the tipster's reliability or the specific details of the anonymous tip, it failed to supply the warrant-issuing judge with a reasonable basis to find probable cause justifying the seizure and testing of Barrera's urine. Thus, we agree with the motion court's conclusion that the warrant-issuing judge clearly erred in issuing the warrant.

Point I is denied.

## Point II

Having established that Barrera's Fourth Amendment rights were violated, we must now consider whether that violation justifies suppression of the test results from the urine sample. *See Herring v. United States*, 555 U.S. 135, 140 (2009) ("The fact that a Fourth Amendment violation occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies. Indeed, exclusion 'has always been our last resort, not our first impulse,' . . . ." (citations omitted)).

> The exclusionary rule operates as a judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect. As with any remedial device, the rule's application has been restricted to those instances where its remedial objectives are thought most efficaciously served. Where "the exclusionary rule does not result in appreciable deterrence, then, clearly, its use . . . is unwarranted."

*Arizona v. Evans*, 514 U.S. 1, 10-11 (1995) (alteration in original) (citations omitted).

"When police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted 'in *objectively* reasonable reliance' on

---

not consider it now. Simply put, that basic information *should* have been included in Detective's warrant applications and supporting affidavits.

13

the subsequently invalidated search warrant. We (perhaps confusingly) called this

*objectively* reasonable reliance 'good faith.'" *Herring*, 555 U.S. at 142 (emphasis added)

(citing *U.S. v. Leon*, 468 U.S. 897, 922 & n.23 (1984)). "The rationale for the exception

to exclusion is that 'the marginal or nonexistent benefits produced by suppressing

evidence obtained in objectively reasonable reliance on a subsequently invalidated search

warrant cannot justify the substantial costs of exclusion.'" *State v. Robinson*, 454 S.W.3d

428, 442 (Mo. App. W.D. 2015) (quoting *Leon*, 468 U.S. at 922).

> [H]owever, . . . the good-faith exception does not apply and suppression
> remains appropriate if: (1) the affiant provides information *he knows* or
> reasonably should know *is false*; (2) the magistrate or judge wholly
> abandons his or her judicial role; (3) the *affidavit is so lacking in probable
> cause as to render official belief in its existence entirely unreasonable*; or
> (4) the warrant is so facially deficient the executing officers cannot
> reasonably presume it to be valid.

*Id.* (emphasis added) (footnotes omitted) (citing *Wilbers*, 347 S.W.3d at 562). "As to

whether the affidavit was 'so lacking in indicia' of probable cause such that [Detective]

was unreasonable to rely on it, our inquiry is 'whether a reasonably well-trained officer

would have known that the search was illegal despite the magistrate's authorization.'"

*Id.* at 443 (quoting *State v. Brown*, 741 S.W.3d 53, 59 (Mo. App. W.D. 1987)).

A reasonably well-trained officer that obtains a warrant using a "bare bones"

affidavit should know the warrant is not valid and cannot rely in good faith upon it. *See*

*Leon*, 468 U.S. at 923 n.24 ("Nothing in our opinion suggests, for example, that an

officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on

colleagues who are ignorant of the circumstances under which the warrant was obtained

to conduct the search."). One classic example of a "bare bones" affidavit is one based on

little more than a vague, anonymous hearsay allegation and a corresponding conclusory assertion of probable cause by law enforcement: "Our earlier cases illustrate the limits beyond which a magistrate may not venture in issuing a warrant. . . . An officer's statement that 'affiants have received reliable information from a credible person and believe' that heroin is stored in a home, is likewise inadequate. *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964)." *Gates*, 462 U.S. at 239 (identifying the affidavit in *Aguilar* as an example of an obviously invalid "bare bones" affidavit).

As discussed in our analysis of Point I, Detective's affidavit consists of a one-sentence hearsay allegation with no other corroborating information; it is not materially different from the "bare bones" affidavit in *Aguilar* that the *Leon* court recognized as an example that fails to deserve good-faith-exception treatment relating to the exclusionary rule. Because the affidavit here was likewise lacking in any indicia of probable cause, we conclude that Detective did not act in good faith in relying upon it, foreclosing application of the good-faith exception to the exclusionary rule.

And, beyond the obviously deficient affidavit, Detective also submitted false information to the issuing judge when he asserted in the affidavit that "[a] search warrant was obtained and a urine sample was obtained from Mr. Israel Barrera on September 14, 2021." We acknowledge Detective's testimony at the suppression hearing that he subjectively did not intend to deceive the issuing judge by including these statements, but his *subjective* intent is irrelevant to our *objective* analysis of good faith. Objectively, Detective applied for the search warrant with an affidavit that included false statements, and his testimony confirms that he knew these statements were false when he applied for

the warrant. The deliberate inclusion of false information in the warrant application is the exact kind of intentional misconduct meant to be deterred by the exclusionary rule. *Leon*, 468 U.S. at 923 ("Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false . . . ."). Accordingly, the false information included in the affidavit provides an additional basis for denying application of the good-faith exception to the exclusionary rule.

Under these circumstances, we agree with the motion court that the good-faith exception to the exclusionary rule is inapplicable to this case and we thus conclude the motion court did not err in suppressing the results of Barrera's urine test.

Point II is denied.

### Conclusion

The judgment of the motion court is affirmed.

_____
Mark D. Pfeiffer, Judge

Karen King Mitchell, Presiding Judge, and Lisa White Hardwick, Judge, concur.